**Michael TIMMONS, Plaintiff,**

v.

**CITY OF MONTGOMERY, ALABAMA, etc., et al., Defendants.**

Civ. A. No. 86–T–709–N.

United States District Court, M.D. Alabama, N.D.

March 17, 1987.

Julian McPhillips, Janie Baker Clarke, Montgomery, Ala., for plaintiff.

J. Bernard Brannan, Jr., Montgomery, Ala., for all defendants.

## MEMORANDUM OPINION

MYRON H. THOMPSON, District Judge.

This lawsuit is, in part, a constitutional challenge to the vagrancy ordinance of the City of Montgomery, Alabama. Plaintiff Michael Timmons, a black man, has brought this lawsuit claiming that an attempt by two city police officers to arrest him under the law was illegal. He has sued and seeks damages from the City of Montgomery and the two officers who attempted to arrest him.

This cause, which is soon to be tried before a jury, is now before the court on Timmons's motion for partial summary judgment. By the motion, Timmons contends that the vagrancy law is unconstitutional and that, as a result, the officers' attempt to arrest him under the law was also unconstitutional. For reasons that follow, the court concludes that the motion should be granted.

## I. BACKGROUND

The undisputed facts are as follows. On the evening of October 22, 1985, two police officers patrolling in a police car noticed that a black man was bent over a parked car; they suspected that he might be trying to burglarize the car. When the two officers pulled up behind the parked car to investigate, the man ran away with a "bundle" in his hand. The officers then checked the parked car and found no signs of forced entry; they also radioed the car's tag and vehicle identification numbers to police headquarters and learned that the car belonged to Patricia Timmons. During this time, a woman came out of a nearby residence and identified herself as Patricia Timmons, the car's owner. As she spoke, the officers saw the man whom they had just seen, enter the residence. One of the officers indicated to Ms. Timmons that the man was the person whom they suspected had attempted to burglarize her car. She informed the officers that man was in fact her brother who had been waiting at the car for her.

Although the officers no longer had reason to believe that a car burglary was in progress, they insisted upon speaking with Ms. Timmons's brother. At the request of the officers, Ms. Timmons then went into the house to ask her brother to speak to the officers. When her brother came out, the officers ordered him to identify himself. He refused to talk to them, and the officers then attempted to arrest him for "failing to identify himself." A brief struggle then ensued, with Patricia Timmons and her sister Rosa Timmons joining in the fray to help their brother. The officers eventually broke away from the struggle and radioed for police backup. When the backup arrived, the two officers, on the advice of a superior officer, returned to police headquarters to obtain arrest warrants. No arrests were made at that time.

One of the officers thought he heard Patricia Timmons identify her brother as "Lindsey." Those later arrested were therefore Lindsey Timmons, Patricia Timmons and Rosa Timmons. Lindsey Timmons was charged with failing to identify himself, in violation of § 29–15(a)(6) of the city's vagrancy ordinance; he was also charged with "harassment" and refusing to obey a police officer. His sisters were charged with interfering with a police officer. The Timmonses went through a series of trials and retrials, the last of which ended in a hung jury for all of them.

The plaintiff in this lawsuit, Michael Timmons, alleges that he, not his brother Lindsey Timmons, was the subject of the attempted arrest; he contends that the later arrest of his brother Lindsey Timmons was a mistake. He says that he ran away from

the police officers when they pulled up behind his sister's car, because he had a beer can in a bag and was afraid the police might "hassle" him because of it. He has now brought this lawsuit claiming that the attempt to arrest him was unconstitutional.

## II. THE LAW

Two of the many issues that will be before the court and jury at the outset of trial are: first, whether the man whom the two police officers attempted to arrest was Michael Timmons rather than his brother; and, second, if so, whether the attempted arrest of Michael Timmons was constitutionally impermissible. By his motion for partial summary judgment, Timmons asks the court to assume that he was the subject of the attempted arrest and to resolve the second issue before trial.

█ Summary judgment is appropriate only if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Partial summary judgment is appropriate here because the resolution of the constitutionality of the attempted arrest will not require the resolution of any disputed facts and is, therefore, purely an issue of law. Moreover, it is particularly appropriate and desirable that the parties be informed at this time, before trial, of the court's understanding of how the constitutionality issue should and will be resolved; the resolution is likely to be crucial to the effective prosecution and defense of this case and in general to its orderly disposition. The court will therefore proceed to resolve the issue of whether the attempted arrest was constitutional. Also, because whether Michael Timmons was the subject of the attempted arrest is a disputed fact which only a jury may resolve, in resolving the constitutional issue the court will merely assume that it was

Michael Timmons whom the officers attempted to arrest.[1]

The vagrancy law under which the attempt to arrest Timmons was made is § 29–15(a)(6) of the City Code, which is as follows:

(a) Every person who commits any of the following acts shall be guilty of disorderly conduct, a misdemeanor:

.    .    .    .    .

(6) Who loiters or wanders upon the streets or from place to place without apparent reason or business and who refuses to identify himself and to account for his presence when requested by any peace officer to do so, if the surrounding circumstances are such as to indicate to a reasonable man that the public safety demands such identification.

As already stated, Timmons's contention that his attempted arrest under this law was illegal is premised on his contention that the law itself is unconstitutional. The court agrees that if the law is indeed invalid then the attempted arrest based on it would also be illegal. The court therefore turns to the pivotal issue of whether § 29–15(a)(6) is unconstitutional.

Timmons makes essentially two challenges to the law, one based on the fourteenth amendment to the U.S. Constitution and the other on the fourth amendment.

### A. Fourteenth Amendment Challenge

Timmons contends that § 29–15(a)(6) is vague, in violation of the due process clause of the fourteenth amendment. The court agrees.

█ The void-for-vagueness doctrine, as embodied in the due process clause, requires that a criminal statute meet two requirements: the statute must define the

1. To be sure, the two police officers only *attempted* to arrest Michael Timmons; they never actually arrested him. However, in attempting to arrest Timmons, the two officers still detained him, though briefly. "[W]henever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person," *Brown v. Texas*, 443 U.S. 47, 50, 99

S.Ct. 2637, 2640, 61 L.Ed.2d 357 (1979), *quoting Terry v. Ohio*, 392 U.S. 1, 16, 88 S.Ct. 1868, 1877, 20 L.Ed.2d 889 (1968), and the seizure is subject to the proscriptions of the Constitution. Therefore, if the detention of Timmons, though only a brief attempted arrest, did not meet the requirements of the Constitution, it was illegal.

criminal offense, first, with sufficient definiteness that ordinary people can understand what conduct is prohibited and, second, in such a manner that does not encourage arbitrary and discriminatory enforcement. *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983). The latter requirement—that a penal law establish minimal guidelines for those who are to enforce it—is considered to be the most important. *Id.*

The vagueness doctrine is premised on the notion that, because the "Constitution is designed to maximize individual freedoms within a framework of ordered liberty," *id.*, laws which seek to limit freedoms must be examined for not only their "substantive authority and content," *id.*, but also for their "definiteness or certainty of expression." *Id.* When a legislative body enacts a law that fails to provide minimal guidelines, it has in effect authorized police officers, prosecutors, judges, and jurors to limit another's freedoms according to their own personal prejudices and predilections, *id.*; it has authorized rule by whim rather than law.

■ Section 29–15(a)(6) appears to have, at least, three elements: (1) a person's "loiter[ing] or wander[ing] upon the streets or from place to place without apparent reason or business"; (2) the person's "refus[al] to identify himself and to account for his presence"; and (3) "surrounding circumstances ... such as to indicate to a reasonable man that the public safety demands such identification." It is apparent that these three elements are extremely imprecise and that, as a result, the law contains no standard by which city law enforcement officers may determine when it has been violated.

How does one initially determine when a person is loitering or wandering without 'apparent' reason or business? Is it by the person's gait, posture or countenance? Or is it by the person's dress or apparent wealth or poverty—or race or nationality?[2] What is 'apparent' idle conduct will vary depending upon the personal experiences and prejudices of the person viewing the conduct; in other words, what conduct is "without apparent reason or business" can only be in the "eye of the beholder."[3] Moreover, assuming the phrase "identify himself" is clear enough, how much information is sufficient to 'account' for one's presence? And what if the 'accounting' is not believed by the police officer or what if the police officer does not like the accounting? Has one then not accounted for one's self? And finally, tying the law to "public safety demands" does not save the law from constitutional censure. It is not without significance that the City of Montgomery has not provided the court with any guidelines for determining when public safety demands identification.

Section 29–15(a)(6) therefore "vests virtually complete discretion in the hands of the police to determine whether the suspect

---

**2.** For instance, is the law triggered by a poor black youth walking through a wealthy all white neighborhood—even if his 'unapparent' reason is to study with one of his white classmates? And can anyone say with certainty that a black youth standing on a street corner is no more likely to be viewed as loitering or wandering "without apparent reason or business" than, say, a white lady out for a morning walk?

In light of the recent and pervasive past history of racial discrimination in and by the City of Montgomery, as documented in the records of this court, *see Buskey v. Oliver*, 565 F.Supp. 1473, 1475 (M.D.Ala.1983), and the numerous cases cited therein, this court would have to shut its eyes to reality not to recognize the substantial likelihood of unequal and discriminatory application of the law in Montgomery.

*See Papachristou v. City of Jacksonville*, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972) (one of the most disturbing attributes of vagrancy laws is their potential for unequal, discriminatory application).

**3.** The subjectivity of the ordinance is apparent from the facts here. Clearly, few persons would seriously characterize "running away from the police" as "loitering or wandering." Moreover, such conduct cannot be seriously considered to be "without apparent reason or business," for the reason is clear and unmistakable: to get away from the police. Without question, the real concern of the officers was not that Timmons was wandering or loitering, or even running; their concern was that he ran *away from the police.*

has satisfied the statute and must be permitted to go on his way in the absence of probable cause to arrest." *Kolender,* 461 U.S. at 358, 103 S.Ct. at 1858. Under the imprecise terms of the law, the right of any individual to walk the streets of Montgomery is left to the whims and prejudices of the police of this city and those who control the police.[4] The court therefore concludes that § 29–15(a)(6) violates the fourteenth amendment.

In reaching this conclusion, the court has not been insensitive to the demands of law enforcement. To be sure, combating the present epidemic of crime is a weighty concern, *see Papachristou v. City of Jacksonville,* 405 U.S. 156, 171, 92 S.Ct. 839, 848, 31 L.Ed.2d 110 (1972); and, most certainly, broadly worded vagrancy laws could be useful to law enforcement in this war. But, in concluding in this instance that the requirements for definiteness and clarity outweigh the present heavy demands of law enforcement, the court follows well established precedent and does not make new law.

One of the earliest successful challenges to a vagrancy statute was to the State of Alabama's own vagrancy law, 1940 Code of Alabama, Title 14, §§ 437–439 (1958 rev.), which, though not identical to § 29–15(a)(6), used some of the same imprecise terminology; in 1969, in *Broughton v. Brewer,* 298 F.Supp. 260 (S.D.Ala.1969), a three-judge court found the state law to be unconstitutionally vague.[5] Later, in *Powell v. Stone,* 507 F.2d 93 (9th Cir.1974), *rev'd on other grounds,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), the Ninth Circuit Court of Appeals found a local vagrancy ordinance from Henderson, Nevada to be void for vagueness; the ordinance was identical to the one at issue here. And more recently, in *Kolender v. Lawson, supra,* the Supreme Court struck down, as void for vagueness, a California statute

---

**4.** Indeed, the facts here dramatically demonstrate the chameleonic characteristics of the conduct proscribed by § 29–15(a)(6). The officers were not concerned with the fact that Timmons was simply running; rather, as they testified in pretrial depositions and other earlier proceedings, their concern was that he ran *away from the police. See* Note 3, *supra.* Section 29–15(a)(6) was therefore used by the officers, at their discretion, to condemn the following conduct as criminal and warranting arrest and conviction: the refusal of a person, who has initially run away from the police, to identify himself when caught by the police.

**5.** In response to *Broughton,* the state passed a new vagrancy statute, 1975 Code of Alabama, §§ 13A–11–6 through 13A–11–10, which, according to the commentary that accompanies the new law, attempted "to punish identifiable conduct rather than status." Thus, an effort was made to make the law less subject to arbitrary and discriminatory enforcement. For example, § 13A–11–9 provides:

(a) A person commits the crime of loitering if he:

(1) Loiters, remains or wanders about in a public place for the purpose of begging; or

(2) Loiters or remains in a public place for the purpose of gambling; or

(3) Loiters or remains in a public place for the purpose of engaging or soliciting another person to engage in prostitution or deviate sexual intercourse; or

(4) Being masked, loiters, remains or congregates in a public place; or

(5) Loiters or remains in or about a school, college or university building or grounds after having been told to leave by any authorized official of such school, college or university, and not having any reason or relationship involving custody of or responsibility for a pupil or any other specific, legitimate reason for being there, and not having written permission from a school, college or university administrator; or

(6) Loiters or remains in any transportation facility, unless specifically authorized to do so, for the purpose of soliciting or engaging in any business, trade or commercial transactions involving the sale of merchandise or services; or

(7) Loiters or remains in any place with one or more persons for purpose of unlawfully using or possessing a dangerous drug.

(b) A person does not commit a crime under subdivision (a)(4) of this section if he is going to or from or staying at a masquerade party, or is participating in a public parade or presentation of an educational, religious, or historical character or in an event as defined in subdivision (1) of section 13A–11–140.

(c) "Deviate sexual intercourse" in subdivision (a)(3) of this section is defined as in subdivision (2) of section 13A–6–60.

(d) "Dangerous drug" in subdivision (a)(7) of this section means any narcotic, drug or controlled substance as defined in chapter 2 of Title 20 of this Code and any schedule incorporated therein.

(e) Loitering is a violation.

identical to the one challenged here, though, admittedly, the basis for the Court's action was not the facial wording of the statute but how the statute had been interpreted by the state courts. Other cases that have reached the same conclusion, but which have involved vagrancy laws with wording somewhat different from that in § 29–15(a)(6), include *Papachristou, supra,* and *United States ex rel. Newsome v. Malcolm,* 492 F.2d 1166 (2nd Cir.1974), *aff'd sub nom. Lefkowitz, Attorney General of New York v. Newsome,* 420 U.S. 283, 95 S.Ct. 886, 43 L.Ed.2d 196 (1975).

In condemning vagrancy laws that lack governing standards, these courts recognized that these laws "furnish a convenient tool for 'harsh and discriminatory enforcement by local prosecuting officials, against particular groups deemed to merit their displeasure.'" *Papachristou,* 405 U.S. at 170, 92 S.Ct. at 847, *quoting Thornhill v. Alabama,* 310 U.S. 88, 97–98, 60 S.Ct. 736, 742, 84 L.Ed.2d 1093 (1940). They further recognized that the right to wander, and even loiter, are not minor amenities. As Justice William O. Douglas, explained in *Papachristou,*

> Persons "wandering or strolling" from place to place have been extolled by Walt Whitman and Vachel Lindsay.
>
> . . . . .
>
> ... [T]hese activities are historically part of the amenities of life as we have known them. They are not mentioned in the Constitution or in the Bill of Rights. These unwritten amenities have been in part responsible for giving our people the feeling of independence and self-confidence, the feeling of creativity. These amenities have dignified the right of dissent and have honored the right to be non-conformists and the right to defy submissiveness. They have encouraged lives of high spirits rather than hushed, suffocating silence.
>
> They are embedded in Walt Whitman's writings, especially in his "Song of the Open Road." They are reflected too, in the spirit of Vachel Lindsay's "I Want to Go Wandering," and by Henry D. Thoreau.

*Id.,* 405 U.S. at 164, 92 S.Ct. at 844 (footnotes omitted). These courts concluded, as has this court, that in light of these concerns the balance must be struck in favor of these amenities and away from the threat of rule by caprice.

### B. Fourth Amendment Challenge

■ Timmons contends that § 29–15(a)(6) also violates the fourth amendment. With but one exception, the fourth amendment generally prohibits the police from seizing or searching a person unless there is 'probable cause' to believe that the person has committed a crime. *Papachristou,* 405 U.S. at 169, 92 S.Ct. at 847. The one exception, commonly called a 'Terry stop,' is that, where the police have a reasonable suspicion, based on articulable facts, that a person has engaged in criminal activity, they may detain the suspect briefly for the purpose of questioning and, in so doing, may conduct a brief frisk of the suspect to protect themselves from concealed weapons. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In other words, the police may arrest a person only where there is probable cause of criminal activity, and they may conduct a *Terry* stop only where there is reasonable suspicion, based on objective facts, of criminal activity.

■ Timmons contends that the attempt to arrest him violated the fourth amendment in at least two ways. The court agrees. First, by authorizing arrest and conviction for conduct that is at most suspicious, § 29–15(a)(6) subverts the constitutional requirement that an arrest must be predicated on probable cause. As the Ninth Circuit explained in *Powell v. Stone,*

> It authorizes arrest and conviction for conduct that is no more than suspicious. A legislature could not reduce the standard for arrest from probable cause to suspicion; and it may not accomplish the

same result indirectly by making suspicious conduct a substantive offense. Vagrancy statutes do just that, for they authorize arrest and conviction for the vagrancy offense if there are reasonable grounds to suspect that the accused may have committed, or if left at large will commit, a more serious offense. Police are duty-bound to investigate suspicious conduct, and founded suspicion will support an investigative stop and inquiry. But more is required to justify arrest.

507 F.2d at 96 (citations omitted); *see also United States ex rel. Newsome v. Malcolm,* 492 F.2d at 1172.

Second, the identification requirement in § 29–15(a)(6) is particularly offensive under the fourth amendment. The section authorizes police to compel a person to identify himself or herself even in the absence of circumstances that would justify a *Terry* stop—that is, even in the absence of a reasonable suspicion, based on objective facts, of criminal conduct. Indeed, this is just what happened here. The circumstances surrounding the two police officers' effort to compel Timmons to identify himself were not sufficient to justify even a *Terry* stop; for, when the two officers attempted to arrest Timmons because he refused to identify himself, they had already learned that Timmons was not engaged in a burglary as they had originally suspected.[6]

In *Brown v. Texas,* 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979), the Supreme Court expressly condemned such police conduct as violative of the fourth amendment. The Court held that "to detain appellant and require him to identify himself violated the Fourth Amendment because the officers lacked any reasonable suspicion to believe appellant was engaged or had engaged in criminal conduct." *Id.,* at 52, 99 S.Ct. at 2641. The Court explained that

The Texas statute under which appellant was stopped and required to identify himself is designed to advance a weighty social objective in large metropolitan centers: prevention of crime. But even assuming that purpose is served to some degree by stopping and demanding identification from an individual without any specific basis for believing he is involved in criminal activity, the guarantees of the Fourth Amendment do not allow it. When such a stop is not based on objective criteria, the risk of arbitrary and abusive police practices exceeds tolerable limits.

*Id.* The Court, however, reserved reaching whether a person may be punished for refusing to identify himself in the context of a justified *Terry* stop.

In *Lawson v. Kolender,* the Ninth Circuit did reach this issue, and found that a person may not be punished in such circumstances. 658 F.2d 1362, 1367–69 (9th Cir. 1981). And, on Supreme Court review of the Ninth Circuit decision, Justice William J. Brennan, Jr. in a concurring opinion agreed with the Ninth Circuit. 461 U.S. at 363–69, 103 S.Ct. at 1860–64. As he explained, the scope of seizure permitted by *Terry* is "strictly circumscribed," *id.,* at 365, 103 S.Ct. at 1862; the "encounters must be brief; the suspect must not be moved or asked to move more than a short distance; physical searches are permitted only to the extent necessary to protect the police officers involved during the encoun-

---

**6.** It is clear from the record that the two officers disliked the fact that Timmons ran when they arrived. In *Terry,* the Supreme Court expressed a particular sensitivity to police misuse of field interrogations in black and other minority communities. The Court explained that the all too common friction between police and minority groups is severely exacerbated "where the 'stop and frisk' of youths or minority group members is motivated by the officers' perceived need to maintain the power image of the beat officer, an aim sometimes accomplished by humiliating anyone who attempts to undermine police control of the streets.' " 392 U.S. at 14 n. 11, 88 S.Ct. at 1876 n. 11, *quoting* L. Tiffany, D. McIntyre & D. Rotenberg, Detection of Crime: Stopping and Questioning, Search and Seizure, Encouragement and Entrapment (1967), 47–48.

ter; and, most importantly, the suspect must be free to leave after a short time and *to decline to answer the questions put to him.*" *Id.* (emphasis added). He then concluded that a government may not subvert these *Terry* restrictions "by making it a crime to refuse to answer police questions during a *Terry* encounter, any more than it could abridge the protections of the Fifth and Sixth Amendments by making it a crime to refuse to answer police questions once a suspect has been taken into custody." *Id.*, at 366–67, 103 S.Ct. at 1863.

This court agrees with Justice Brennan and the Ninth Circuit. Therefore, even if circumstances justified the two Montgomery police officers conducting a *Terry*-type stop, their attempt to arrest Timmons and to compel him to identify himself would still be unconstitutional.[7]

### III.

In conclusion, the court holds that § 29–15(a)(6) is unconstitutional. The court further holds that the October 22, 1985, attempt to arrest Michael Timmons was also unconstitutional. An appropriate order will be entered.

---

**7.** Also, to the extent § 29–15(a)(6) criminalizes a person's failure to identify himself, fifth amendment concerns are implicated. *Kolender,* 461 U.S. at 360 n. 9, 103 S.Ct. 1859 n. 9. "It is a 'settled principle that while the police have the right to request citizens to answer voluntarily questions concerning unsolved crimes they have no right to compel them to answer.'" *Id. quoting Davis v. Mississippi,* 394 U.S. 721, 727, n. 6, 89 S.Ct. 1394, 1397, n. 6, 22 L.Ed.2d 676 (1969). However, Timmons does not raise, and this court need not reach, such concerns.