**Frank A. ROMANO; Maria Romano, Plaintiffs–Appellants,**

**v.**

**William BIBLE; Steve Ducharme; C. Brian Harris; Deborah P. Griffin; Augie Gurrola; William Curran; Bob J. Lewis; Gerald Cunningham; Thomas Roach; Dennis Amerine; John O'Reilly; Kenneth R. Gragson; Betty B. Vogler; Nevada Gaming Control Board; Nevada Gaming Commission; Frankie Sue Del Papa, Attorney General of the State of Nevada, Defendants–Appellees.**

No. 97–17019.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 11, 1998.

Decided Feb. 26, 1999.

**1184**

Edward S. Coleman, Las Vegas, Nevada, for the plaintiffs-appellants.

P. Mark Ghan, Solicitor General, Office of the Attorney General, Carson City, Nevada, for the defendants-appellees.

Before: FLETCHER, FERGUSON, and THOMPSON, Circuit Judges.

FERGUSON, Circuit Judge:

Frank Romano voluntarily relinquished his gaming license and later wanted it back, claiming that the defendants violated his due process and equal protection rights. When the Nevada Gaming Commission refused to revisit the issue, Frank and Maria Romano brought this action for civil damages pursuant to 42 U.S.C. § 1983 against the Nevada Attorney General and current and former members of the Nevada Gaming Commission and the Nevada Gaming Control Board. The Romanos contend that the defendants violated their constitutional rights by depriving Mr. Romano of his gaming license. The district court granted the state defendants' motion to dismiss on seven alternate grounds. We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm on the grounds that absolute immunity and the Eleventh Amendment shield the defendants from liability.

## I. BACKGROUND

We state the facts, as we must in this appeal, as they are set forth in the Romanos' complaint. Since 1981, the Nevada Gaming Commission ("Commission") licensed Mr. Romano to own, manufacture, and distribute gaming devices as a partner in American Coin Companies. In 1989, the Nevada Gaming Control Board ("Board"), which investigates and prosecutes violations of the gaming laws, filed a complaint with the Commission seeking disciplinary action against Mr. Romano and his partners, Rudolph and Rudolph M. LaVecchia. The Board alleged that the LaVecchias altered gaming devices to defraud players, a practice known as "gaffing," and that Mr. Romano was vicariously criminally liable for their conduct. The LaVecchias fled Nevada, leaving Mr. Romano to contend with the authorities.

For a number of reasons, including the government's failure to cooperate with discovery and ineffective assistance of counsel, Mr. Romano entered into a stipulation with the Board in 1990 agreeing to relinquish his gaming license and to pay a fine. As part of the stipulation, Mr. Romano waived his statutory right to a hearing and waived any legal rights that he might have against Board

members. While acknowledging that the stipulation was voluntarily signed, Mr. Romano did not admit liability.

As a result of the revocation of Mr. Romano's license and the closure of his businesses, the Romanos suffered financial losses and filed for bankruptcy in 1992. The Romanos also filed an adverse complaint in the bankruptcy proceeding against the LaVecchias. During that proceeding, an investigator employed by the Board testified to Mr. Romano's lack of knowledge concerning the fraud. One of the bankruptcy court's factual findings was that Mr. Romano was not culpable for his partners' conduct.

Consequently, Mr. Romano petitioned the Commission to vacate its order approving the stipulation which had resulted in the voluntary relinquishment of his gaming license. The Commission concluded that it lacked jurisdiction to hear the petition. Nevada law provides that, if no petition for judicial review has been filed, a motion for rehearing must be brought within 10 days of the Commission's order. Seven years had elapsed since Mr. Romano entered into the stipulation. The Commission also declined to consider Mr. Romano's petition under a regulation permitting it to issue discretionary rulings. The result was that Mr. Romano could not obtain discovery.

The Romanos then filed this action, contending that the failure of the Board to provide them with evidence in its possession tending to exculpate Mr. Romano violated their due process rights. In addition, the plaintiffs alleged that by instituting disciplinary action against Mr. Romano, the Board selectively enforced the Nevada Gaming Act in violation of the plaintiffs' equal protection rights. The complaint sought compensatory and punitive damages. After a hearing, the district court granted the state's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). The court concluded that: (1) the Romanos did not have a property right in the gaming license; (2) the Romanos failed to allege an equal protection violation in the pleadings; (3) Mr. Romano waived his right to file a § 1983 action against state officials by signing the stipulation; (4) the statute of limitations prohibits the action; (5) the Eleventh Amendment bars the action against all defendants; and (6) both absolute and qualified immunity shield the defendants from liability.

## II. DISCUSSION

■ We review *de novo* a district court's dismissal for failure to state a claim under Rule 12(b)(6). *Steckman v. Hart Brewing Inc.*, 143 F.3d 1293, 1295 (9th Cir.1998). We can affirm the district court's dismissal for failure to state a claim on any basis fairly supported by the record. *Janicki Logging Co. v. Mateer*, 42 F.3d 561, 564 (9th Cir. 1994).

### A. Eleventh Amendment

■ Whether a state is immune from suit under the Eleventh Amendment is a question of law which we review *de novo*. *Micomonaco v. Washington*, 45 F.3d 316, 319 (9th Cir.1995). The Nevada Gaming Control Board and the Nevada Gaming Commission as agency defendants in this action are immune from suit. The Eleventh Amendment bars suits against the State or its agencies for all types of relief, absent unequivocal consent by the state. *Pennhurst v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). Nevada has not consented to suit by expressly waiving its Eleventh Amendment immunity. N.R.S. § 41.031(3). Accordingly, we affirm the district court's dismissal as to the state agency defendants.

■ The Eleventh Amendment also bars the Romanos' claims against the remaining defendants in their *official* capacities. The amendment prohibits actions for damages against an "official's office," that is, actions that are in reality suits against the state itself. *Stivers v. Pierce*, 71 F.3d 732, 749 (9th Cir.1995).

■ However, the Romanos have brought suit against individual Board and Commission members in their *personal* capacities as well. They assert that, while acting under color of state law, the defendants deprived Mr. Romano of a protected property interest in violation of due process. They need to allege nothing more to avoid the Eleventh Amendment's shield. The Supreme Court has made it clear that a plaintiff can establish *personal* liability in a § 1983 action simply by

showing that the official acted under color of state law in deprivation of a federal right. *Hafer v. Melo,* 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). We also have presumed that officials necessarily are sued in their personal capacities where those officials are named in a complaint, even if the complaint does not explicitly mention the capacity in which they are sued. *See Shoshone–Bannock Tribes v. Fish & Game Comm'n,* 42 F.3d 1278, 1284 (9th Cir.1994); *Cerrato v. San Francisco Community College Dist.,* 26 F.3d 968, 973 n. 16 (9th Cir.1994). Consequently, the Eleventh Amendment imposes no bar to the Romanos' action against the individual defendants in their personal capacities.

### B. Absolute Immunity

■ The district court concluded that absolute immunity protected the individual defendants named by the Romanos. We review *de novo* the district court's determination regarding immunity. *Trevino v. Gates,* 23 F.3d 1480, 1482 (9th Cir.1994).

■ Absolute immunity extends to agency officials when they preside over hearings, initiate agency adjudication, or otherwise perform functions analogous to judges and prosecutors. *Butz v. Economou,* 438 U.S. 478, 514–15, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). The Supreme Court has adopted a "functional approach" to determine whether an official is entitled to absolute immunity. This approach looks to the nature of the function performed, not the identity of the actor who performed it. *Buckley v. Fitzsimmons,* 509 U.S. 259, 269, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993). Judges and those performing quasi-judicial functions are absolutely immune from damages for acts performed *within their judicial capacities. Stump v. Sparkman,* 435 U.S. 349, 360, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978). Prosecutors are extended absolute immunity from damages when performing activities closely associated with the judicial process. *Imbler v. Pachtman,* 424 U.S. 409, 430–31, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). Quasi-prosecutorial immunity, however, does not attach to administrative or investigatory acts by prosecutors unrelated to their preparation for and initiation of prosecution. *Buckley,* 509 U.S. at 273, 113 S.Ct. 2606. In extending absolute

immunity to those within administrative agencies who perform prosecutorial and judicial functions, the Court recognized that administrative proceedings are usually adversarial in nature and provide many of the same features and safeguards that are provided in court. *Butz,* 438 U.S. at 513, 98 S.Ct. 2894. Thus, we must assess the function that Nevada gaming officials performed when they engaged in the alleged unconstitutional conduct to determine if they are entitled to absolute immunity from damages.

The Romanos contend that the individual defendants acted outside the scope of their duties. We disagree. Under Nevada law, Board and Commission members have access to all gaming premises to inspect or seize any gaming devices or documents relevant to suspected violations of the gaming laws. N.R.S. § 463.140. The Board must investigate the qualifications of each applicant for a gaming license and has discretion to recommend denial or revocation of a license. N.R.S. § 463.1405(1), (2). The Commission then may deny or revoke a license for "any cause deemed reasonable." N.R.S. § 463.1405(3). Both Board and Commission members can issue subpoenas, compel the attendance of witnesses, administer oaths, and require testimony under oath. N.R.S. § 463.140(5).

■ Within the gaming regulatory scheme, the attorney general provides legal advice to the Board and Commission and represents them in proceedings initiated against them. N.R.S. § 463.0199. Either agency may recommend that the attorney general prosecute any public offense committed in violation of the gaming laws. N.R.S. § 463.141. In Mr. Romano's case, Attorney General Frankie Sue Del Papa is the predecessor of the attorney general who prepared the stipulation on behalf of the Board. The Romanos sued her as the party "responsible for the ... supervision and prosecution" of Mr. Romano's case. She is entitled to absolute immunity because the activity of representing the Board and Commission in the disciplinary action against Mr. Romano is within the scope of her duties in pursuing quasi-judicial proceedings. *See Hirsh v. Justices of Supreme Court of Cal.,* 67 F.3d 708, 715 (9th Cir.1995) (concluding that the Cali-

fornia Attorney General was entitled to absolute immunity for his limited role in the Bar disciplinary system).

 The Gaming Control Board conducts investigations and decides whether to file complaints with the Commission disciplining a licensee. N.R.S. § 463.310. In so doing, it acts much like a prosecutor. The Board initiated disciplinary proceedings against Mr. Romano and entered into settlement negotiations with him, actions that are prosecutorial in nature. Moreover, prosecutorial functions that require the exercise of discretion are absolutely immune, and the decision whether to disclose exculpatory evidence which has not been requested is such a function. *See Imbler,* 424 U.S. at 431–32 n. 34, 96 S.Ct. 984. Thus, the Board is entitled to absolute immunity as well.

 Commission members adjudicate disciplinary proceedings against licensees. They conduct hearings with many of the traditional safeguards of courts, and they issue orders. Every party to a hearing before the Commission can call and examine witnesses, introduce exhibits, cross-examine opposing witnesses, impeach witnesses, and offer rebuttal evidence. N.R.S. § 463.313. The Commission may take "judicial notice" of facts and may cite parties for contempt like any Article III court. *Id.*; N.R.S. § 463.314. Members who hear the evidence against a licensee must render a written decision on the merits which includes findings of fact. N.R.S. § 463.3145. Here, as with any judicial plea bargain, the Commission approved the stipulation entered into by Mr. Romano and the Board to resolve his disciplinary proceeding. Like the other defendants, Commission members carried out acts of independent decision-making integral to the functioning of a quasi-judicial process.

 In *Butz,* the Court considered several other factors to be characteristic of the judicial process and, thus, relevant to the absolute immunity inquiry. These factors include the adversarial nature of the process, the correctability of errors on appeal, and the presence of safeguards in the regulatory framework to control unconstitutional conduct and to insulate the adjudicators from political influence. 438 U.S. at 512–13, 98

S.Ct. 2894. Statutory procedural safeguards in the gaming disciplinary process satisfy these factors. In addition to the safeguards noted above, licensees are entitled to judicial review of the Commission's decision. N.R.S. §§ 463.315, 463.318. The Commission may grant a rehearing upon petition if additional material evidence exists. N.R.S. § 463.3145. Parties may have counsel. Besides the opportunity to present and cross-examine witnesses, parties are provided with adequate notice of the hearing and a copy of the charges against them. N.R.S. § 463.312. Nevada also attempts to shield Commission members from political influence. The governor appoints members of the Commission for staggered terms of four years, and each member can be removed by the governor. N.R.S. § 463.024; 1985 Nev.Stat., ch. 266, § 2 at 804. No elected official or officer of any political party can serve as Commissioner, or any person with a pecuniary interest in the gaming industry. N.R.S. §§ 463.023, 463.025. Not more than three members can be of the same major political party. *Id.*

In addition, other courts have extended *Butz* to state agency officials involved in the adjudication of state regulatory matters, at least where the regulatory scheme provided safeguards against arbitrary and biased decision-making. *See, e.g., Hirsh,* 67 F.3d at 715 (Bar Court judges and prosecutors in attorney disciplinary actions have quasi-judicial or quasi-prosecutorial immunity); *Bermudez v. Duenas,* 936 F.2d 1064, 1066 (9th Cir.1991) (parole board officials entitled to absolute immunity for activities which are part of the decision to grant, deny or revoke parole).

### III. CONCLUSION

The case at the bar underscores the importance of extending absolute immunity to gaming officials involved in disciplinary proceedings. The highly regulated gaming industry in Nevada generates millions of dollars. Where these dollars go turn on decisions made by Board and Commission members, who determine which people will or will not be "players" in the industry. With so much at stake in their decisions, these officials must be able to pursue disciplinary proceedings "free from intimidation

**1188**

and harassment." *Butz,* 438 U.S. at 516, 98 S.Ct. 2894. To deny them immunity would be to disservice the broader public interest in having people perform these functions without fear of having to personally defend their actions in civil damages lawsuits like the Romanos'. *See Babcock v. Tyler,* 884 F.2d 497, 502 (9th Cir.1989). We conclude that absolute immunity should protect these gaming decisions.[1]

AFFIRMED.

---

1. Because this case can be resolved on Eleventh Amendment and immunity grounds, we do not reach the other issues raised in this appeal. Nor do we express any view on the merits of the complaint.

