James CAREY, Plaintiff–Appellant,

v.

NEVADA GAMING CONTROL BOARD; Gregory Spendlove; State of Nevada, Defendants–Appellees.

No. 00–16649.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 7, 2001.

Filed Feb. 4, 2002.

874

Robert A. Nersesian, Nersesian & Sankiewicz, Las Vegas, Nevada, for the plaintiff-appellant.

Kimberly M. Rushton, Chief Deputy Attorney General, Las Vegas, Nevada, for the defendants-appellees.

Appeal from the United States District Court for the District of Nevada, Philip M. Pro, District Judge, Presiding.

Before B. FLETCHER, BOOCHEVER, and FISHER, Circuit Judges.

## OPINION

BOOCHEVER, Circuit Judge.

Plaintiff James Carey brought this civil rights action against the State of Nevada, the Nevada Gaming Control Board, and Agent Gregory Spendlove under 42 U.S.C. § 1983 and state law. He now appeals the district court's grant of summary judgment to all defendants. We have jurisdic-

tion under 28 U.S.C. § 1291. We affirm in part, reverse in part, and remand.

## BACKGROUND

On June 19 and June 20, 1996, plaintiff James Carey, a Nevada resident, and his friend, Ed Amsberry, were playing "21" at the Ramada Hotel and Casino in Laughlin, Nevada. Ramada employees suspected the two men of cheating and observed them closely. Carey and Amsberry employed a number of legal gambling strategies, such as "card counting," "shuffle tracking," and giving one another hand signals. Ramada employees also suspected that Carey had a computer or other counting device in his shoe based on the positioning of his foot under the table, the way his shoes fit his feet, and the employees' observation that Carey walked favoring his right foot. Use of a counting device is illegal.

In the early morning hours of June 20, Ramada personnel called Agent Gregory Spendlove of the Nevada Gaming Control Board to investigate whether Carey and Amsberry were cheating. Agent Spendlove watched the two patrons on closed-circuit television and reviewed videotapes of their play from the previous day, but was unable to determine at that time that any cheating had occurred. Spendlove decided further investigation was required. Carey and Amsberry left the casino, and Agent Spendlove instructed Ramada personnel to contact him if the two returned so he could further observe them.

Later that day, Carey and Amsberry returned. Ramada security detained them in the security office and called Agent Spendlove. Upon arriving, Agent Spendlove identified himself to Carey and Amsberry, indicated he was investigating possible violations of the gaming laws, and read them their *Miranda* rights. Spendlove also "*Terry* frisked" both detainees.

Agent Spendlove then asked Carey and Amsberry to identify themselves. Carey refused. Agent Spendlove instructed Carey that he could identify himself either verbally or by showing identification. Carey again refused and asked to speak to a lawyer. Spendlove informed Carey that he could be arrested for refusing to identify himself, and gave him at least three opportunities to do so.

In the meantime, Spendlove instructed both detainees to remove their shoes and socks. Spendlove searched both men's shoes, removing the insoles of Carey's shoes in the process. With Amsberry's consent, Spendlove and Ramada security searched the hotel room that Carey and Amsberry were sharing. After detaining Carey and Amsberry for between one and one and a half hours, Spendlove determined there was no probable cause to arrest either of them for violating the gaming laws. However, based on Carey's refusal to identify himself, Spendlove arrested Carey under the authority of two Nevada statutes which require individuals to provide information to peace officers under certain circumstances. Carey spent the night in jail. He was released the next morning, and no charges were brought against him.

Carey sued Agent Spendlove, the State of Nevada (the "State") and the Nevada Gaming Control Board (the "Board") under 42 U.S.C. § 1983, claiming that Spendlove violated his Fourth, Fifth, and Fourteenth Amendment rights by searching Carey's shoes without probable cause and by arresting Carey for refusing to identify himself. Carey also brought claims under state law for false imprisonment and battery. The district court granted summary judgment against Carey, finding that the State and the Board were immune under the Eleventh Amendment,

and that Spendlove was entitled to qualified immunity. Carey appeals.[1]

## ANALYSIS

We review *de novo* a district court's grant of summary judgment based on Eleventh Amendment or qualified immunity. *See Romano v. Bible*, 169 F.3d 1182, 1185 (9th Cir.1999); *Knox v. Southwest Airlines*, 124 F.3d 1103, 1105 (9th Cir. 1997).

### A. Eleventh Amendment Immunity of the State and the Board

■ Carey argues that the State and the Board are *not* immune from the present action because Nevada waived its sovereign immunity by statute.[2] Although Nevada Revised Statute § 41.031 does indeed waive *sovereign* immunity under some circumstances, it specifically preserves *Eleventh Amendment*[3] immunity. Citing *Alden v. Maine*, 527 U.S. 706, 713, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999), Carey argues that Nevada's immunity from suit *by its own residents* derives from common-law sovereign immunity, not from the Eleventh Amendment. Carey thus contends that Nevada, in waiving "sovereign

immunity," has consented to be sued in federal court by its own residents.

Although Carey makes an interesting argument, we are not free to disregard binding precedent. Ninth Circuit cases interpreting § 41.031 have unanimously concluded that Nevada's retention of "Eleventh Amendment immunity" bars *all* actions against Nevada in federal court, including those brought by Nevada residents. *See Romano*, 169 F.3d at 1185; *Austin v. State Indus. Ins. Sys.*, 939 F.2d 676, 677 (9th Cir.1991); *O'Connor v. Nevada*, 686 F.2d 749, 750 (9th Cir.1982) (per curiam); *Productions & Leasing v. Hotel Conquistador Inc.*, 573 F.Supp. 717, 720 (D.Nev.1982), *aff'd*, 709 F.2d 21, 21–22 (9th Cir.1983). Federal courts have assumed that Nevada's waiver of sovereign immunity "only gives Nevada's consent to suits in its own courts," *Nevada v. Hall*, 440 U.S. 410, 421, 99 S.Ct. 1182, 59 L.Ed.2d 416 (1979); and indeed, as far as we are aware, every action in which an individual successfully sued the State of Nevada under § 41.031 was litigated in a Nevada state court. We therefore conclude that the district court correctly granted summary judgment to the State and the Board, a

---

1. Carey also requests review of the district court's denial of his motion for partial summary judgment. Although denials of summary judgment are generally not appealable, here the district court's grant of summary judgment to the defendants was a final decision giving us discretionary jurisdiction to review the court's previous denial of Carey's motion for partial summary judgment. *See Jones–Hamilton Co. v. Beazer Materials & Services, Inc.*, 973 F.2d 688, 693–94 & n. 2 (9th Cir.1992). We decline, however, to exercise that discretion.

2. Nevada Revised Statute § 41.031, entitled "Waiver of Sovereign Immunity," provides:
 1. The State of Nevada hereby waives its immunity from liability and action and hereby consents to have its liability determined in accordance with the same rules of law as are applied to civil actions against

natural persons and corporations, except as otherwise provided [herein and in other sections].... The State of Nevada further waives the immunity from liability and action of all political subdivisions of the state
 ...
 ...
 3. The State of Nevada does not waive its immunity from suit conferred by Amendment XI of the Constitution of the United States.

3. The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

state agency, *see Romano*, 169 F.3d at 1185, based on Eleventh Amendment immunity.

## B. *Immunity of Agent Spendlove*

We must next decide whether the district court correctly granted summary judgment to Agent Spendlove on Carey's state and federal claims.

### 1. *State law claims*

 Carey has sued Agent Spendlove under state law for false imprisonment and battery. Although Nevada has waived sovereign immunity under some circumstances, it has retained immunity for state officials exercising discretion. *See* Nev. Rev.Stat. §§ 41.031, 41.032; *Ortega v. Reyna*, 114 Nev. 55, 953 P.2d 18, 23 (1998). State officials can be sued for torts they commit while performing non-discretionary or "ministerial" acts, but not for performing discretionary acts. *See Foster v. Washoe County.*, 114 Nev. 936, 964 P.2d 788, 791–92 (1998). A discretionary act "requires the exercise of personal deliberation, decision and judgment," while a ministerial act is "performed by an individual in a prescribed legal manner ... without regard to, or the exercise of, the judgment of the individual" and which "envisions direct adherence to a governing rule or standard with compulsory result." *Id.* at 792 (internal quotes and modifications omitted). "The key question, then, is which kind of acts [Agent Spendlove was] performing" when the alleged torts occurred. *Id.*

According to Carey's complaint, the false imprisonment occurred when Spendlove incarcerated Carey without probable cause and the battery occurred when Spendlove "handcuffed and chained [Car-

ey] against his will in order to detain him." Thus, as the district court observed, "the acts that form the basis for Carey's battery and false imprisonment claims stem from Spendlove's decision to arrest Carey for failing to identify himself." [4]

The Nevada Supreme Court held in *Ortega v. Reyna*, 953 P.2d at 18, that a state officer's warrantless arrest of an individual was a discretionary act for which the officer was immune. In that case, a state trooper arrested a motorist because the trooper believed the motorist was refusing to sign a traffic citation. The Nevada Supreme Court held that the arrest was discretionary because "the trooper used his judgment in stopping appellant, in concluding that appellant refused to sign the traffic citation, and in taking appellant to jail after arresting her." *Id.* at 23.

 The present case is legally indistinguishable from *Ortega*. The district court found that "the course of action taken by Spendlove in arresting Carey was not a prescribed act; rather it was an act resulting from the exercise of his own discretion." Carey offers no evidence to the contrary, and we find no facts in the record that would suggest Agent Spendlove was performing a ministerial act when he arrested Carey. We therefore conclude that Spendlove's arrest of Carey was a discretionary act for which Spendlove is immune, and that the district court correctly granted summary judgment to Agent Spendlove on both of Carey's state law claims.

### 2. *Section 1983 claim*

 Carey has also sued Agent Spendlove under 42 U.S.C. § 1983, which provides a cause of action for persons deprived of federal rights under color of

---

4. Because neither state law claim is based on Spendlove's search of Carey's shoes, we need not decide whether the shoe search was a ministerial or discretionary act under Nevada law.

state law.[5] We assume Carey is suing Agent Spendlove in both his official capacity and his personal capacity. To the extent Carey is suing Spendlove in his official capacity, Carey's claim fails because Carey's complaint requests only damages, which are not available against state officers sued in their official capacities. *See Dittman v. California,* 191 F.3d 1020, 1026 (9th Cir.1999). On the other hand, state officers like Agent Spendlove may be sued for damages in their personal capacities under § 1983. *See id.* at 1027. Such officers may assert the affirmative defense of qualified immunity. *See Harlow v. Fitzgerald,* 457 U.S. 800, 815, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

■ Determining whether Agent Spendlove is entitled to qualified immunity is a two-step process. The first inquiry is whether Carey has alleged a violation of a constitutional right. *See Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 2155–56, 150 L.Ed.2d 272 (2001). In deciding this question, we must consider the constitutionality of the statutes under which Carey was arrested. *See Grossman v. City of Portland,* 33 F.3d 1200, 1203–04 (9th Cir.1994) (explaining that when alleged violation of rights is based on enforcement of a statute, court must consider the constitutionality of the statute). If Carey has alleged a violation of a constitutional right, we must next consider whether the right violated was so clearly established that a reasonable officer in Spendlove's position would have known his conduct was illegal. *See Saucier,* 121 S.Ct. at 2156.

a. *Has Carey alleged a violation of a constitutional right?*

*Carey claims Agent Spendlove violated his Fourth and* Fifth Amendment rights

by arresting him for refusing to identify himself. Agent Spendlove arrested Carey under the authority of two Nevada statutes which require individuals to furnish information to police officers under certain circumstances. Nevada Revised Statute § 171.123 allows "any peace officer [to] detain any person whom the officer encounters under circumstances which reasonably indicate that the person has committed, is committing or is about to commit a crime." Nev.Rev.Stat. § 171.123(1). The Nevada Supreme Court has interpreted § 171.123 to authorize detentions based on reasonable suspicion, the same level of suspicion required for a *Terry* stop. *See State v. Sonnenfeld,* 114 Nev. 631, 958 P.2d 1215, 1216 (1998); *see also State v. Lisenbee,* 13 P.3d 947, 950 (Nev.2000) (describing § 171.123 as "[t]he Nevada codification of *Terry* "). Section 171.123 further states that "[a]ny person so detained *shall* identify himself, but may not be compelled to answer any other inquiry of any peace officer." Nev.Rev.Stat. § 171.123(3) (emphasis added). The other statute relied upon by Agent Spendlove makes it a misdemeanor for a person, "after due notice, [to] refuse or neglect to make or furnish any statement, report or information lawfully required of him by any public officer ... or [to] willfully hinder, delay or obstruct any public officer in the discharge of his official powers or duties." Nev.Rev. Stat. § 197.190. Read together, these two statutes require individuals stopped pursuant to *Terry* to identify themselves to police, on pain of committing a crime.

Since Carey refused to identify himself to Agent Spendlove, it is clear that Agent Spendlove had probable cause to arrest

---

**5.** Section 1983 provides: "Every person who, under color of [state law] subjects ... any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law...." 42 U.S.C. § 1983.

Carey under these statutes. Yet Carey's "constitutional claim does not stem from an absence of probable cause to arrest, but from the alleged unconstitutionality of the [statutes] justifying the arrest." *Grossman*, 33 F.3d at 1203. If the statutes are unconstitutional, then Carey suffered constitutional injury by being arrested under their authority, despite their applicability to his conduct. *Id.* at 1204.

It is undisputed that Agent Spendlove lawfully detained Carey under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), based on Spendlove's reasonable suspicion that Carey was cheating at "21." Nevertheless, Carey contends that §§ 171.123 and 197.190 are unconstitutional as applied to him because the Fourth and Fifth Amendments bar Nevada from compelling him to identify himself to police, even during a lawful investigatory detention.

Although the Supreme Court has never squarely addressed this question, the Ninth Circuit has done so twice. In *Lawson v. Kolender*, 658 F.2d 1362 (9th Cir. 1981), we invalidated a disorderly conduct statute that required individuals to identify themselves to police based on less than probable cause, holding that the statute was void for vagueness and that it violated the Fourth Amendment. In *Kolender v. Lawson*, 461 U.S. 352, 361–62, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983), the Supreme Court affirmed our decision on the ground that the statute was void for vagueness and declined to address our alternate holding that the statute also violated the Fourth Amendment. Nevertheless, the Supreme Court did not reverse our decision in *Lawson;* therefore, *Lawson's* holding that the police cannot, consistent with the Fourth Amendment, compel identification during an investigatory stop remains good law in this circuit.

In addition, we reaffirmed the holding of *Lawson* in *Martinelli v. City of Beaumont*, 820 F.2d 1491 (9th Cir.1987). In *Martinelli*, the plaintiff was approached by officers who told her they were investigating an accident that may have involved her automobile. Despite the officers' repeated requests that the plaintiff identify herself, she refused, and was ultimately arrested for "delaying a lawful police investigation by refusing to identify herself." *Id.* at 1492. The officers relied on a state statute that criminalized wilful resistance, delay or obstruction of any public officer in the discharge of his duties. *Id.* at 1492 n. 1. Relying on *Lawson*, we held that arresting the plaintiff for refusing to identify herself during a *Terry* stop violated the Fourth Amendment. *Martinelli*, 820 F.2d at 1494.

 [10] Thus, under *Martinelli* and *Lawson*, Carey has alleged a violation of his Fourth Amendment rights. To the extent §§ 171.123 and 197.190 authorized Carey's arrest for refusing to identify himself, they are unconstitutional under the law of this circuit. In *Lawson*, we explained that such statutes violate the Fourth Amendment because "as a result of the demand for identification, the statutes bootstrap the authority to arrest on less than probable cause, and [because] the serious intrusion on personal security outweighs the mere possibility that identification might provide a link leading to arrest." 658 F.2d at 1366–67; *see also Martinelli*, 820 F.2d at 1494; *Timmons v. City of Montgomery*, 658 F.Supp. 1086, 1091–93 (M.D.Ala.1987). This is essentially what happened in the present case. Relying on §§ 171.123 and 197.190, Spendlove was able to arrest Carey even though there was no probable cause to believe that Carey had violated the gaming laws, and even though Carey's name was not relevant to determining whether Carey had cheated.

An arrest under such circumstances is unreasonable. We therefore hold that Carey's arrest violated the Fourth Amendment.[6]

Carey also claims that Spendlove's search of his shoes violated the Fourth Amendment. Since Spendlove did not have a warrant, his search of Carey's shoes was unreasonable unless the search fell within one of the exceptions to the warrant requirement. *See United States v. Morgan,* 799 F.2d 467, 468–69 (9th Cir. 1986).

The district court held there was no Fourth Amendment violation because the search was incident to a lawful arrest. A search that precedes a lawful arrest does not violate the Fourth Amendment if the probable cause for the arrest exists at the time of the search. *See Morgan,* 799 F.2d at 469–70. Although Carey was not yet under arrest when his shoes were searched, the district court held that at the time of the search, Spendlove had probable cause to arrest Carey under §§ 171.123 and 197.190 based on Carey's refusal to identify himself. We have determined, however, that §§ 171.123 and 197.190 were unconstitutionally applied to Carey. It follows that Carey's arrest was not lawful, and the search of his shoes cannot be justified as incident to a lawful arrest. We therefore conclude that, if the facts are as Carey alleges, the search of his shoes was unreasonable under the Fourth Amendment.

b. *Did Carey have a "clearly established" right not to identify himself?*

Since we conclude that Spendlove *did violate Carey's* constitutional rights,

we must next consider whether Carey's right not to identify himself during the investigatory detention was so clearly established that Spendlove's reliance on §§ 171.123 and 197.190 was unreasonable. *See Michigan v. DeFillippo,* 443 U.S. 31, 37–38, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979); *Grossman,* 33 F.3d at 1208–10. If a reasonable official in Spendlove's position would have understood that searching and arresting Carey under these circumstances would violate Carey's rights, Spendlove is not entitled to qualified immunity. *See Saucier,* 121 S.Ct. at 2156. Although state officials who rely on statutes are generally presumed to act reasonably, an official may nevertheless be liable for enforcing a statute that is "patently violative of fundamental constitutional principles." *Grossman,* 33 F.3d at 1209; *see also DeFillippo,* 443 U.S. at 38, 99 S.Ct. 2627 (no qualified immunity if statute is "so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws").

As discussed above, there are two Ninth Circuit cases directly on point, *Lawson* and *Martinelli,* which unambiguously hold that compelling an individual to identify himself during a *Terry* stop violates the Fourth Amendment. Those cases invalidated state statutes that authorized arrests based on the detained individual's refusal to identify himself. In addition, *Lawson* and *Martinelli* are in accord with Supreme Court pronouncements on this issue. The Court has consistently recognized that a person detained pursuant to *Terry* " 'is not obliged to answer, answers may not be compelled, and refusal to answer furnishes no basis for an arrest.' "

---

**6.** The violation is even more egregious because Carey did nothing more than rely on Spendlove's initial indication that Carey had a "right to remain silent." In short, the Nevada statutes at issue authorized Carey's arrest notwithstanding the lack of probable cause to believe he had violated any substantive law, and notwithstanding his reliance on Spendlove's representation that he had a right to remain silent.

*Dunaway v. New York,* 442 U.S. 200, 211 n. 12, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979) (*quoting Terry v. Ohio,* 392 U.S. 1, 34, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (White, J., concurring)); *see also Berkemer v. McCarty,* 468 U.S. 420, 439, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984) (individual detained under *Terry* is "not obliged to respond" to police officer's questions); *Kolender,* 461 U.S. at 360 n. 9, 103 S.Ct. 1855 (*quoting Davis v. Mississippi,* 394 U.S. 721, 727 n. 6, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969)) (it is a "settled principle" that police investigating crimes have no right to compel citizens to answer questions); *Florida v. Royer,* 460 U.S. 491, 497, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) (person approached pursuant to *Terry* "need not answer any question put to him [and] may decline to listen to the questions at all and may go on his way").[7]

Based on the foregoing, we conclude that a reasonable officer in Spendlove's position would have known that Carey had a clearly established Fourth Amendment right not to identify himself, and that the Nevada statutes at issue, like the statutes in *Lawson* and *Martinelli,* were unconstitutional to the extent they allowed Carey to be arrested for exercising his rights.[8]

We therefore hold that Agent Spendlove is not entitled to qualified immunity and reverse the district court's grant of summary judgment to Agent Spendlove in his personal capacity.

## CONCLUSION

For the foregoing reasons, we affirm the district court's grant of summary judgment to the State and the Board. We also affirm the grant of summary judgment to Agent Spendlove on the state law claims and on the § 1983 claim to the extent Spendlove was sued in his official capacity. We reverse the district court's grant of summary judgment to Agent Spendlove in his personal capacity on the § 1983 claim. Each party shall bear its own costs.

**AFFIRMED IN PART, REVERSED IN PART and REMANDED.**

---

**7.** A number of state and federal district court decisions also endorse the notion that a detained person cannot be compelled to identify himself. *See Justin v. City of Los Angeles,* No. CV–00–12352–LGB–AIJX, 2000 WL 1808426, at *9 (C.D.Cal. Dec.5, 2000); *Timmons,* 658 F.Supp. at 1091–92; *People v. Vasquez,* 465 Mich. 83, 631 N.W.2d 711, 717 n. 3 (2001); *State v. White,* 97 Wash.2d 92, 640 P.2d 1061, 1063, 1067 (1982); *People v. DeFillippo,* 80 Mich.App. 197, 262 N.W.2d 921, 924 (1977), *rev'd on other grounds, DeFillippo,* 443 U.S. at 31, 99 S.Ct. 2627; *People v. Berck,* 32 N.Y.2d 567, 347 N.Y.S.2d 33, 300 N.E.2d 411, 415–16 (1973).

**8.** We note that some federal courts in other circuits have concluded there is no clearly established right to refuse to identify oneself during an investigative stop. *See Risbridger v.*

*Connelly,* 275 F.3d 565 (6th Cir. 2002); *Oliver v. Woods,* 209 F.3d 1179, 1190 (10th Cir. 2000); *Albright v. Rodriguez,* 51 F.3d 1531, 1537–39 (10th Cir.1995); *Tom v. Voida,* 963 F.2d 952, 959 (7th Cir.1992); *Gainor v. Douglas County,* 59 F.Supp.2d 1259, 1284 (N.D.Ga.1998). These courts relied on the fact that the Supreme Court has twice declined to decide whether a person can be compelled to identify himself during a lawful investigatory stop. If we had only the Supreme Court's precedents to guide us, we might also conclude that the right was not clearly established. However, unlike our sister circuits, we have the benefit of two precedents on point in our own circuit, in addition to Supreme Court dicta that supports these precedents. We think this is sufficient to clearly establish the right in our circuit.