Benjamin Travis RISBRIDGER,
Plaintiff,

v.

Lawton CONNELLY, City of East
Lansing, and Shereif Fadly,
Defendants.

No. 5:99–CV–130.

United States District Court,
W.D. Michigan,
Southern Division.

Oct. 31, 2000.

Dorean M. Koenig, Cooley Law School, Bryan J. Waldman, Sinas, Dramis, Brake, Boughton & McIntyre PC, Lansing, MI, for Benjamin Travis Risbridger, plaintiffs.

David K. Otis, Gene Hullinghorst, Plunkett & Cooney, PC, Lansing, MI, Dennis E. McGinty, McGinty Jakubiak Frankland Hitch, et al., East Lansing, MI, for Lawton Connelly, Chief of Police, City of East Lansing, in his Official and Individual Capacities, East Lansing, City of, a Municipal Corporation, Shereif Fadly, named as "Shereif Fadly" on complaint, a police officer of the City of East Lansing, in his individual capacity, defts.

### *OPINION*

QUIST, District Judge.

Plaintiff, Benjamin Risbridger ("Risbridger"), has sued Defendants, Lawton Connelly ("Connelly"), the East Lansing, Michigan Police Chief, Officer Shereif Fadley ("Officer Fadley"), an East Lansing Police Officer, and the City of East Lansing ("East Lansing"), alleging that Defendants violated his federal and state constitutional rights and committed various state law torts when Officer Fadley arrested Risbridger pursuant to an East Lansing ordinance. In his First Amended Complaint, Risbridger alleges that Defendants arrested him without probable cause in violation of the Fourth Amendment and that the East Lansing ordinance Defendants used to effect the arrest violated Risbridger's First Amendment and due process rights. Risbridger seeks both de-

claratory and compensatory relief. Now before the Court are Defendants' Motion to Dismiss and/or for Summary Judgment and Risbridger's Motion for Partial Summary Judgment.

## I. *Facts*[1]

On November 30, 1997, at approximately 2:30 a.m., Risbridger and a companion were walking in the 300 block of MAC in East Lansing. Prior to that time, Officer Fadley was called in as a back-up to Officer Phillips, who was questioning two suspicious suspects who stated that they were watching a fight in the 300 block of MAC alley. As Officer Fadley was questioning the suspects, Risbridger and his companion walked by. At that point, Parker, one of the suspects, pointed at Risbridger and stated that Risbridger was involved in the fight. Based upon that statement, Officer Fadley approached Risbridger and asked him for identification. Risbridger responded, "No. What for?" Officer Fadley informed Risbridger that he was investigating a fight and that a witness had identified Risbridger as being involved in the fight. Officer Fadley again asked Risbridger for identification, and Risbridger said "No." Officer Fadley then advised Risbridger that he would arrest him if he did not identify himself. When Risbridger refused again, Officer Fadley arrested Risbridger, placed him in the patrol car, and transported him to the East Lansing police station. Risbridger was charged under East Lansing Ordinance 9.102(19) for hindering a police officer in the performance of his duties and was later released on bond.

Risbridger filed a motion to dismiss the charge in the 54–B district court. In a written opinion, Judge Richard D. Ball denied the motion but found the arrest invalid because Officer Fadley did not have authority to arrest Risbridger for the alleged misdemeanor assault and battery and Risbridger "was free to decline to speak with" Officer Fadley. (5/20/98 Opinion and Order at 2, Pl.'s. Br. Supp. Ex. C.) On motion by the prosecutor, an order of nolle prosequi was entered and the case was dismissed.

## II. *Motion Standards*

An action may be dismissed if the complaint fails to state a claim upon which relief can be granted. Fed. R.Civ.P. 12(b)(6). The moving party has the burden of proving that no claim exists. Although a complaint is to be liberally construed, it is still necessary that the complaint contain more than bare assertions of legal conclusions. *Allard v. Weitzman (In re DeLorean Motor Co.)*, 991 F.2d 1236, 1240 (6th Cir.1993)(citing *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir.1988)). All factual allegations in the complaint must be presumed to be true, and reasonable inferences must be made in favor of the non-moving party. 2A James W. Moore, *Moore's Federal Practice*, ¶ 12.34[1][b] (3d ed.1997). The Court need not, however, accept unwarranted factual inferences. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). Dismissal is proper "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984)(citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)).

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R.Civ.P. 56. The rule requires that the disputed facts be material. Material facts are facts which are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

---

1. The facts set forth below are undisputed, except that Risbridger contends that Officer Fadley did not inform him that he was investigating a fight until after Officer Fadley arrested Risbridger.

242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute over trivial facts which are not necessary in order to apply the substantive law does not prevent the granting of a motion for summary judgment. *Id.* at 248, 106 S.Ct. at 2510. The rule also requires the dispute to be genuine. A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.* This standard requires the non-moving party to present more than a scintilla of evidence to defeat the motion. *Id.* at 251, 106 S.Ct. at 2511 (citing *Schuylkill v. Munson,* 14 Wall. 442, 448, 20 L.Ed. 867 (1871)).

A moving party who does not have the burden of proof at trial may properly support a motion for summary judgment by showing the court that there is no evidence to support the non-moving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324–25, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). If the motion is so supported, the party opposing the motion must then demonstrate with "concrete evidence" that there is a genuine issue of material fact for trial. *Id.; Frank v. D'Ambrosi,* 4 F.3d 1378, 1384 (6th Cir.1993). The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Financial Corp. v. Van Sickle,* 967 F.2d 233, 236 (6th Cir.1992)(quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

### III. *Discussion*

The ordinance relevant to the claims in this case provides, in pertinent part:

No person shall:

✻ * * * ✻ *

(19) Assault, obstruct, resist, hinder, or oppose any member of the police force, any peace officer, or firefighter in the discharge of his/her duties as such

(East Lansing Ordinance No. 9.102(19), Defs.' Br. Supp. Mot. Sum. J. Ex. 3.) Defendants seek dismissal or summary judgment on all claims, and Risbridger seeks summary judgment on his claims that the arrest pursuant to Ordinance 9.102(19) violated his First Amendment, Fourth Amendment, and due process rights.

### A. Federal Claims

#### 1. Fourth Amendment

■ In Count I of his First Amended Complaint, which is a subject of both motions, Risbridger alleges that Defendants violated his Fourth Amendment rights by arresting him without probable cause. Under the Fourth Amendment, "[t]he right of the people to be secure in their persons ... against unreasonable ... seizures, shall not be violated, and no Warrants shall issue, but upon probable cause ...." U.S. Const. amend. IV. Generally, the Fourth Amendment prohibits an arrest not supported by probable cause. *See Criss v. City of Kent,* 867 F.2d 259, 262 (6th Cir.1988). "Probable cause to make an arrest exists if the facts and circumstances within the arresting officer's knowledge 'were sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense.'" *Pyles v. Raisor,* 60 F.3d 1211, 1215 (6th Cir.1995)(alteration in original)(quoting *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964)). However, the Supreme Court has recognized that police officers may conduct brief investigatory detentions with less than probable cause within the bounds of the Fourth Amendment so long as they have a reasonable suspicion of criminal activity. *See Terry v. Ohio,* 392 U.S. 1, 30, 88 S.Ct. 1868, 1884–85, 20 L.Ed.2d 889 (1968). "[U]nder *Terry,* when a police officer reasonably concludes that criminal activity may be afoot, the officer may briefly stop the suspicious person and make 'reasonable inquiries' aimed at confirming or dispelling his suspicions, and may conduct a patdown for weapons." *United States v.*

*Butler,* 223 F.3d 368, 374 (6th Cir.2000). "When a detention rises to the level of a full-fledged arrest, however, the Fourth Amendment demands that the seizure be supported by probable cause." *Gardenhire v. Schubert,* 205 F.3d 303, 313 (6th Cir.2000)(citing Dunaway v. New York, 442 U.S. 200, 212–14, 99 S.Ct. 2248, 2256–57, 60 L.Ed.2d 824 (1979)).

In addressing the parties' motions, the Court notes that Risbridger does not dispute that Officer Fadley had a reasonable suspicion of criminal activity sufficient to justify a *Terry* stop. Thus, although Defendants raise the issue of the *Terry* stop in their brief, the issue presented is whether Risbridger's refusal to identify himself to Officer Fadley gave Officer Fadley probable cause to arrest Risbridger. Stated differently, the Court must determine whether an individual subject to a valid *Terry* stop has the right to decline to identify himself when requested to do so by the police officer without being subject to punishment for refusing to do so. If so, there was no probable cause for the arrest.

### a. *Qualified Immunity*

■ The Court will first address Officer Fadley's argument that he is entitled to qualified immunity. Qualified immunity shields "[g]overnment officials performing discretionary functions" from liability for civil damages "as long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Poe v. Haydon,* 853 F.2d 418, 423 (6th Cir.1988)(quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). A law enforcement officer is entitled to qualified immunity if "a reasonable officer could have believed [his actions] to be lawful, in light of clearly established law and the information the ... officer[ ] possessed." *Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 3040, 97 L.Ed.2d 523 (1987); *see also Watkins v. City of Southfield,* 221 F.3d 883, 887 (6th Cir.2000).

In recent decisions, the Supreme Court has clarified that a court's initial task in evaluating a qualified immunity defense is to determine whether the plaintiff has alleged the deprivation of a constitutional right. *See Wilson v. Layne,* 526 U.S. 603, 609, 119 S.Ct. 1692, 1697, 143 L.Ed.2d 818 (1999). Determining whether the plaintiff has actually alleged the deprivation of a constitutional right "promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Id.* (citing *County of Sacramento v. Lewis,* 523 U.S. 833, 840–42 n. 5, 118 S.Ct. 1708, 1713–14 n. 5, 140 L.Ed.2d 1043 (1998)). Following this approach, the Sixth Circuit has stated:

> The procedure for evaluating claims of qualified immunity is tripartite: First, we determine whether a constitutional violation occurred; second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.

*Williams v. Mehra,* 186 F.3d 685, 691 (6th Cir.1999)(en banc)(citing *Dickerson v. McClellan,* 101 F.3d 1151, 1157–58 (6th Cir.1996)).

For the law to be clearly established, "the law must be clear in regard to the official's particular actions in the particular situation." *Long v. Norris,* 929 F.2d 1111, 1114 (6th Cir.1991). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing" violates federal law. *Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039. While replication of the official's specific conduct is not required to overcome qualified immunity, " 'pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situat-

ed, reasonable government agent that what defendant is doing violates federal law *in the circumstances.*'" *Saylor v. Board of Educ.*, 118 F.3d 507, 515 (6th Cir.1997)(quoting *Lassiter v. Alabama A & M Univ.*, 28 F.3d 1146, 1150 (11th Cir. 1994)(en banc)(emphasis in original)). In the Sixth Circuit, courts look first to decisions of the Supreme Court, then to decisions of the Sixth Circuit and other courts within the Sixth Circuit, and finally to decisions of other circuits. *See Gardenhire*, 205 F.3d at 311; *Barrett v. Harrington*, 130 F.3d 246, 264 (6th Cir.1997). While decisions from other circuits may serve to put officials on notice, a single idiosyncratic opinion from another circuit is insufficient to put a defendant on notice of where the Sixth Circuit might come out on the question. *Davis v. Holly*, 835 F.2d 1175, 1182 (6th Cir.1987).

The third inquiry of the qualified immunity analysis is also objective; a police officer will be immune " 'if officers of reasonable competence could disagree' on whether the conduct violated the plaintiff's rights." *Gossman v. Allen*, 950 F.2d 338, 341 (6th Cir.1991)(quoting *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986)). In determining whether an official is immune, the specific facts of each case must be reviewed to determine whether the constitutional rights at issue were so clearly established that "any official in the defendants' position" would know that his actions violated those rights. *O'Brien v. City of Grand Rapids*, 23 F.3d 990, 999 (6th Cir. 1994).

 As indicated above, the Court must first determine whether a constitutional violation even occurred. *See Wilson*, 526 U.S. at 609, 119 S.Ct. at 1697. Defendants cite *People v. Philabaun*, 461 Mich. 255, 602 N.W.2d 371 (1999)(per curiam), and *People v. Vasquez*, 240 Mich.App. 239, 612 N.W.2d 162 (2000)(per curiam) as support for their argument that Risbridger's refusal to identify himself when requested by

Officer Fadley to do so constituted probable cause under Ordinance 9.102(19). However, neither of those cases address the issue of whether an individual may refuse to identify himself during the course of a valid *Terry* stop. In *Philabaun*, the issue was whether the defendant, after being arrested for operating a vehicle under the influence of intoxicating liquor, violated Michigan's resisting and obstructing statute, M.C.L. § 750.479, by politely refusing to comply with a search warrant authorizing a blood test. The specific issue addressed by the Michigan Supreme Court was whether physical resistance was an element of the crime. The court held it was not:

> The absence of physical resistance does not alter the fact that, if the prosecution's proofs are true, the defendant resisted and opposed Deputy Booker's attempt to execute a search warrant issued by a magistrate of the district court. Physical resistance, threats, and abusive speech can be relevant facts in a prosecution under this statute, but none is a necessary element.

*Id.* at 262, 602 N.W.2d at 375. The issue in *Vasquez* was whether the defendant resisted and obstructed a police officer in violation of M.C.L. § 750.479 by giving the arresting officer a false name. The Michigan Court of Appeals held that such conduct constituted an offense, noting that the defendant's act of giving false information to the officer was "marked[ly] similar[ ]" to the defendant's act in *Philabaun* of refusing to submit to the blood test because "both responses presented an obstacle to the investigating law enforcement agent's attempt to discharge his legal duties." *Id.* at 245, 602 N.W.2d 371. Because neither case addressed whether the Fourth Amendment permits a person to refuse to provide identification in response to a police officer's request during a *Terry* stop, *Philabaun* and *Vasquez* are inapplicable to this case.[2]

---

2. The Court does not understand Risbridger to be claiming that there was no probable

Risbridger contends that the Supreme Court, beginning with *Terry*, has made clear that the Fourth Amendment prohibits police officers from compelling individuals to answer questions, including requests for identification, during the course of a valid investigative detention. The basis of Risbridger's assertion is the concurring opinion of Justice White in *Terry*, who wrote:

> There is nothing in the Constitution which prevents a policeman from addressing questions to anyone on the streets. Absent special circumstances, the person approached may not be detained or frisked but may refuse to cooperate and go on his way. However, given the proper circumstances, such as those in this case, it seems to me the person may be briefly detained against his will while pertinent questions are directed to him. Of course, the person stopped is not obliged to answer, answers may not be compelled, and refusal to answer furnishes no basis for an arrest, although it may alert the officer to the need for continued observation.

*Terry*, 392 U.S. at 34, 88 S.Ct. at 1886. Although Justice White's concurrence was not part of the holding in *Terry*, it has been frequently cited or mentioned by the Court in subsequent opinions. *See Dunaway v. New York*, 442 U.S. 200, 210 n. 12, 99 S.Ct. 2248, 2255 n. 12, 60 L.Ed.2d 824 (1979). In *Brown v. Texas*, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979), the defendant was arrested under a Texas statute which made it a crime for a person to refuse to give his name and address after being requested to do so by a police officer during a lawful stop. The Court held the conviction invalid because the police officers did not have a reasonable suspicion of

criminal activity sufficient to justify an investigatory stop, noting that the only reason the police stopped the defendant was to ascertain his identity *See Brown*, 443 U.S. at 51–53, 99 S.Ct. at 2641 (1979). Because the stop was unlawful under the Fourth Amendment, the Court found it unnecessary to "decide whether an individual may be punished for refusing to identify himself in the context of a lawful investigatory stop which satisfies Fourth Amendment requirements." *Id.* at 53 n. 3, 99 S.Ct. at 2641 n. 3. A few years later, the Supreme Court decided *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983), which presented the issue of whether the defendant's consent to search was valid where the conditions of detention exceeded those of a permissible *Terry* stop. In the plurality opinion, Justice White wrote:

> [L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions. Nor would the fact that the officer identifies himself as a police officer, without more, convert the encounter into a seizure requiring some level of objective justification. The person approached, however, need not answer any question put to him; indeed, he may decline to listen to the questions at all and may go on his way.

*Id.* at 497–98, 103 S.Ct. at 1324 (citations omitted). A year later, Justice Marshall, in an opinion written on behalf of eight

---

cause to arrest him under the ordinance, i.e., that Risbridger's refusal to answer did not "hinder" Officer Fadley's investigation. Rather, Risbridger's contention is that probable cause cannot exist because the Fourth Amendment prevents criminalization of conduct protected by the Fourth Amendment, i.e., a person's refusal to answer questions during a valid *Terry* stop. Although not an issue in

this case, several courts have found probable cause under laws similar to the ordinance in this case based upon the defendant's refusal to provide identification during a valid investigatory detention. *See* Christopher Hall, Annotation, *What Constitutes Obstructing or Resisting Officer, in Absence of Actual Force*, 66 A.L.R. 5th 397, § 16(a) (1999).

justices in *Berkemer v. McCarty*, 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984), stated:

> Under the Fourth Amendment, we have held, a policeman who lacks probable cause but whose "observations lead him reasonably to suspect" that a particular person has committed, is committing, or is about to commit a crime, may detain that person briefly in order to "investigate the circumstances that provoke suspicion." *United States v. Brignoni–Ponce*, 422 U.S. 873, 881, 95 S.Ct. 2574, 2580, 45 L.Ed.2d 607 (1975). "[T]he stop and inquiry must be 'reasonably related in scope to the justification for their initiation.'" *Ibid.* (quoting *Terry v. Ohio, supra*, 392 U.S., at 29, 88 S.Ct., at 1884.) Typically, this means that the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions. *But the detainee is not obligated to respond. And, unless the detainee's answers provide the officer with probable cause to arrest him, he must then be released.*

*Id.* at 439–40, 104 S.Ct. at 3150 (emphasis added)(footnotes omitted). *Accord, Butler*, 223 F.3d at 374 (citing *Berkemer*, 468 U.S. at 439–40, 104 S.Ct. at 3150).

Risbridger contends that the cases cited above, especially *Berkemer*, compel the conclusion that Officer Fadley violated Risbridger's Fourth Amendment rights by arresting Risbridger for failing to identify himself during a valid investigatory stop. Several lower federal courts, as well as some state courts, have reached this conclusion. One example is the Ninth Circuit's decision in *Martinelli v. City of Beaumont*, 820 F.2d 1491 (9th Cir.1987). In *Martinelli*, the plaintiff was arrested after she refused to identify herself to police officers investigating a hit-and-run accident involving the plaintiff's vehicle. The statute providing the basis for the arrest, Cal.Penal Code § 148, contained language substantially similar to the ordinance at issue in this case.[3] The charges were eventually dismissed, and the plaintiff sued the defendants for violating her Fourth Amendment rights. At trial, the plaintiff submitted jury instructions that would have permitted the jury to find that the defendants violated her constitutional rights by arresting her for failing to identify herself during a *Terry* stop. The trial court rejected the instruction and the jury returned verdicts for the defendants. On appeal, the Ninth Circuit held that the statute at issue fell within its prior holding in *Lawson v. Kolender*, 658 F.2d 1362 (9th Cir.1981), *aff'd*, 461 U.S. 352, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983), and that the district court should have instructed the jury that use of the statute to effect an arrest of a person for refusing to identify herself during a lawful *Terry* stop violated the Fourth Amendment. *See Martinelli*, 820 F.2d at 1494 & 1494 n. 2 (citing *Terry*, 392 U.S. at 34, 88 S.Ct. at 1886 (White, J., concurring)). In *Lawson*, the Ninth Circuit struck down a California vagrancy statute making it a misdemeanor for a person to refuse to identify himself and account for his presence when requested to do so by a police officer on the grounds that the statute violated the Fourth Amendment, was subject to arbitrary enforcement by police, and failed to give persons of ordinary intelligence fair and adequate notice of forbidden conduct. With respect to the Fourth Amendment, the Ninth Circuit stated that statutes penalizing a person's refusal to identify himself violate the Fourth Amendment because they "bootstrap the authority to arrest on less than probable cause, and the serious intrusion

---

**3.** The California statute provided in part, "Every person who willfully resists, delays, or obstructs any public officer or peace officer, in the discharge or attempt to discharge any duty of his office ....is punishable by a fine not exceeding one thousand dollars ($1,000), or by imprisonment in a county jail not exceeding one year, or both such fine and imprisonment." *Id.* at 1492 n. 1.

on personal security outweighs the mere possibility that identification may provide a link leading to arrest." *Lawson*, 658 F.2d at 1366–67. The United States Supreme Court affirmed the Ninth Circuit's decision on the basis that the statute was unconstitutionally vague under the Due Process Clause of the Fourteenth Amendment because of its failure to clarify the requirement of "credible and reliable" information. *Kolender v. Lawson*, 461 U.S. 352, 353–54, 103 S.Ct. 1855, 1856, 75 L.Ed.2d 903 (1983). However, the Court specifically declined to address the issue of whether the statute's identification requirement implicated Fourth Amendment concerns or authorized arrests on less than probable cause. *See id.* at 361 n. 10, 103 S.Ct. at 1860 n. 10.

In *United States v. Brown*, 731 F.2d 1491 (11th Cir.1984), *vacated in part on other grounds on reh'g*, 743 F.2d 1505 (11th Cir.1984), the government, in urging affirmance of the district court's order denying the defendant's motion to suppress, argued that probable cause for a search existed because one of the defendants violated a Georgia law by falsely identifying himself. The Eleventh Circuit rejected the argument that probable cause existed because after producing their airline tickets, the defendants simply refused to produce further information and there was no basis for believing that the defendants were not the persons identified on the tickets. The court observed:

> If the Georgia statute were construed to require, not only truthful identification, but proof of truthfulness on demand, it would be unconstitutional. We therefore must interpret the statute to prohibit only actual lies in order to avoid an unconstitutional construction. The defendants' refusal to furnish identification—which they were entitled to do if indeed this was a *Terry* stop, as the government must contend—may have

created suspicion that they had actually used false names, but falls far short of probable cause.

*Id.* at 1494. Similarly, in *Timmons v. City of Montgomery*, 658 F.Supp. 1086 (M.D.Ala.1987), the plaintiff was arrested and charged with failing to identify himself in violation of the city's vagrancy ordinance. Although the court concluded that the circumstances were insufficient to support a *Terry* stop, it noted that under the Fourth Amendment, "even if circumstances justified the two Montgomery police officers conducting a *Terry*-type stop, their attempt to arrest [the plaintiff] and compel him to identify himself would still be unconstitutional." *Id.* at 1093 (footnote omitted)[4]; *see also Spring v. Caldwell*, 516 F.Supp. 1223, 1229 (S.D.Tex.1981)(stating that arresting the petitioner for refusal to identify himself would be "impermissible even in the context of a lawful investigatory stop"), *rev'd on other grounds*, 692 F.2d 994 (5th Cir.1982); *City of Pontiac v. Baldwin*, 163 Mich.App. 147, 151–52, 413 N.W.2d 689, 691 (1987)("The police officers were justified in approaching defendant and telling him they wanted to question him. However, a person approached by the police need not answer any questions put to him. He may decline to listen to the questions and may go on his way"); *Burgess v. State*, 313 So.2d 479, 481 (Fla. App.1975)("While it is permissible for a police officer to detain an individual under Florida's Stop and Frisk Law, Fla. Stat. § 901.151, we are unaware of any requirement of law for an individual citizen to disclose his identity under the factual situation Sub judice").

Based upon the above-cited authorities, including the Ninth Circuit's decision in *Kolender*, this Court concludes that the Fourth Amendment precludes a police officer from compelling an individual subject to a *Terry*-type stop to disclose his identity and that a state may not subvert the prob-

---

4. The court also indicated that criminalization of a person's failure to identify himself implicates Fifth Amendment concerns. *See*

*id.* at 1093 n. 7. Risbridger has not raised such a claim in this case.

able cause requirement of the Fourth Amendment by penalizing an individual for his failure to do so. The Court finds additional support for its conclusion in the Supreme Court's recent decision in *Illinois v. Wardlow,* 528 U.S. 119, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000). In *Wardlow,* the Court held that a defendant's unprovoked flight in a high crime area provided a reasonable suspicion of criminal activity for a *Terry* stop. The Court rejected the suggestion that its holding conflicted with its previous statements that an individual subject to a *Terry* stop is free to ignore the police and go about his business because "[f]light, by its very nature, is not 'going about one's business'; in fact, it is just the opposite." *Id.* at 676. Further, the Court continued, "[a]llowing officers confronted with such flight to stop the fugitive and investigate further is quite consistent with the individual's right to go about his business or to stay put and remain silent in the face of police questioning." *Id.* This Court interprets the Supreme Court's statements in *Berkemer* and *Wardlow* to mean that an individual's refusal to answer an officer's questions during a *Terry* stop, without more, cannot constitute probable cause for an arrest.[5] Thus, the Court concludes that Risbridger was acting within his Fourth Amendment rights when he refused to identify himself to Officer Fadley.

▮ The next inquiry is whether Risbridger's Fourth Amendment right to refuse to identify himself was clearly established. Neither party has cited, nor has the Court found through its research, a decision by any federal court holding that the right at issue in this case was clearly established for purposes of a qualified immunity analysis. However, several circuits and at least two district courts have either held or suggested that the right to refuse to answer a police officer's questions during a *Terry* stop was not clearly

established when those cases were decided. *See Tom v. Voida,* 963 F.2d 952, 959–60 & nn. 7, 8 (7th Cir.1992)(stating that "[d]espite repeated references to this problem, the Supreme Court has never resolved it"); *Gainor v. Rogers,* 973 F.2d 1379, 1386 n. 10 (8th Cir.1992)(noting the question left open by the Supreme Court in *Brown v. Texas* ); *Albright v. Rodriguez,* 51 F.3d 1531, 1537–38 (10th Cir.1995)(stating that "[t]wice the Supreme Court has specifically refused to determine whether an individual can be arrested for refusing to identify himself in the context of a lawful investigatory stop")(citing *Brown v. Texas* and *Kolender*); *Williams v. Jaglowski,* No. 97 C 8850, 1999 WL 965866, at *10–11 (N.D.Ill. Sept.29, 1999)(discussing the right to decline questions in a Fifth Amendment context); *Gainor v. Douglas County,* 59 F.Supp.2d 1259, 1284 (N.D.Ga.1998)(citing the Tenth Circuit's opinion in *Albright* and finding the Eleventh Circuit's statement in *United States v. Brown,* 731 F.2d 1491 (11th Cir.1984), to be dicta). In concluding that the issue remains open, those courts primarily focused upon the fact that the Supreme Court expressly declined to decide the issue in *Brown v. Texas* and *Kolender.* For example, in *Albright,* the Tenth Circuit found the issue open because there was no Tenth Circuit authority on the issue and the Supreme Court refused to decide the issue in *Brown v. Texas* and *Kolender. See Albright,* 51 F.3d at 1537. As further support for its conclusion, the court cited the Seventh Circuit's opinion in *Tom* and the Eighth Circuit's opinion in *Gainor v. Rogers. See id.* at 1537–38. While the court conceded that the Ninth Circuit's decision in *Martinelli* supported the plaintiff's position, it concluded that the plaintiff failed to show that the issue was clearly established in light of the lack of certainty on the issue. *See id.* Similarly, in *Gainor v. Douglas County,* the Northern District of Georgia cited the

---

5. This Court is not aware of any decision by a federal court holding that a person may be subjected to criminal liability based solely upon his refusal to answer an officer's questions or identify himself during a *Terry* stop.

Supreme Court's opinions in *Kolender* and *Brown v. Texas,* as well as the Seventh, Eighth, and Tenth Circuits' decisions in *Tom, Gainor v. Rogers,* and *Albright* in concluding that the law was not clearly established. The court noted that the Eleventh Circuit's statement in *United States v. Brown* that a person subject to a *Terry* stop has the right to refuse to provide identification supported the plaintiff's argument, however, the court concluded that because that statement was dicta, it was insufficient to provide notice of a clearly established right under Eleventh Circuit law. *See Gainor v. Douglas County,* 59 F.Supp.2d at 1284.

Although these cases indicate that the law was not clearly established at the time Officer Fadley arrested Risbridger, none of these courts even considered the Court's statement in *Berkemer v. McCarty,* although dicta, that a detainee in a *Terry* stop is not obligated to respond to an officer's questions, including those regarding identification.[6] In addition, the Sixth Circuit recently cited the Court's statement in *Berkemer* with approval. *See United States v. Butler,* 223 F.3d 368, 374 (6th Cir.2000). And, although decided after the pertinent events in this case occurred, Chief Justice Rehnquist's statement in *Wardlow* that the holding in that case was consistent with a subject's "right to go about his business or to stay put and remain silent in the face of police questioning" when confronted with a *Terry* stop, *Wardlow,* 120 S.Ct. at 676, demonstrates the existence of a previously established Fourth Amendment right of individuals to refuse to answer police officers' questions during a valid investigatory stop. It would seem to be merely a matter of logical

extension to conclude that if an individual has a Fourth Amendment right to refuse to answer a police officer's questions during a *Terry* stop and proceed about his business, an individual may not be arrested for refusing to identify himself in a *Terry* stop. It is true that the Supreme Court has never specifically held that an individual may not be punished simply for refusing to identify himself during a *Terry* stop. However, every single federal court decision of which this Court is aware that has touched on the issue, whether in dicta or as part of its holding, has concluded that an individual has a Fourth Amendment right not to speak and to refuse to identify himself during a valid *Terry* stop. Given these cases, Officer Fadley should have been on notice that he could not arrest Risbridger solely because he refused to identify himself. *Cf. Wilson v. Layne,* 526 U.S. 603, 621, 119 S.Ct. 1692, 1702, 143 L.Ed.2d 818 (1999) (Stevens, J., concurring in part and dissenting in part)(stating that "[p]rior to our decision in *United States v. Lanier,* 520 U.S. 259, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997), no judicial opinion specifically held that it was unconstitutional for a state judge to use his official power to extort sexual favors from a potential litigant. Yet, we unanimously concluded that the defendant had fair warning that he was violating his victim's constitutional rights").[7]

The final inquiry in the qualified immunity analysis is whether Risbridger has alleged sufficient facts to demonstrate that the arrest by Officer Fadley was objectively unreasonable in light of clearly established law. The undisputed facts cited by the parties indicates that Risbridger was

---

**6.** Many of those cases also presented facts beyond the plaintiff's mere refusal to provide identification. For example, in *Tom,* after the police officer called out for the plaintiff to stop walking away, the plaintiff threw a bicycle to the ground and ran away. *See* 963 F.2d at 955, 960. In *Gainor v. Douglas County,* the plaintiff also refused to follow a lawful order by the police officer to stop. *See* 59 F.Supp.2d at 1284–85.

**7.** The Eleventh Circuit has held that dicta cannot generally clearly establish the law for qualified immunity purposes. *See Hamilton By and Through Hamilton v. Cannon,* 80 F.3d 1525, 1530–31 (11th Cir.1996). The Sixth Circuit has not adopted such a rule and, in fact, appears to take the position that dicta can be considered in determining whether a right was clearly established. *See McCloud v. Testa,* 97 F.3d 1536, 1556–57 (6th Cir.1996).

arrested simply for refusing to identify himself. As discussed above, the law at the time of the arrest in 1997 was clearly established such that a reasonable police officer would know that a person subject to an investigatory detention may refuse to comply with the officer's request for identification and, therefore, could not be lawfully arrested solely because of such refusal. Therefore, Officer Fadley is not entitled to qualified immunity. For the same reasons, Chief Connelly is not entitled to qualified immunity on the claims against him in his individual capacity. *Cf. Heggs v. Grant,* 73 F.3d 317, 321 (11th Cir. 1996)(per curiam)(police chief entitled to qualified immunity because of lack of clearly established law).

#### b. *Supervisory Liability*

Defendants contend that Risbridger's official capacity claim against Chief Connelly should be dismissed because he did not directly participate in Risbridger's arrest. It is well settled that a defendant cannot be held liable under 42 U.S.C. § 1983 on a respondeat superior theory of liability. *See Rizzo v. Goode,* 423 U.S. 362, 375–76, 96 S.Ct. 598, 606, 46 L.Ed.2d 561 (1976). The right to direct or control employees is, by itself, insufficient to impose liability upon a defendant for the unconstitutional acts of subordinates. *See Lillard v. Shelby County Bd. of Educ.,* 76 F.3d 716, 727 (6th Cir.1996). To state a claim under § 1983 against a defendant for supervisory liability, a plaintiff must allege a direct causal link between the acts of the subordinate and the supervisory defendant. *See Hays v. Jefferson County,* 668 F.2d 869, 872 (6th Cir.1982)(citing *Rizzo,* 423 U.S. at 370–71, 96 S.Ct. at 603–04).

■ The Sixth Circuit has explained supervisory liability as follows:

Section 1983 liability will not be imposed solely upon the basis of respondeat superior. There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. *At a minimum, a § 1983 plaintiff must show that a supervisory official implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate.*

*Taylor v. Michigan Dep't of Corrections,* 69 F.3d 76, 81 (6th Cir.1995)(alteration in original)(quoting *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir.1984)). Under the Sixth Circuit's test, a supervisor may be held liable if he participated in or encouraged the specific instance of misconduct, or authorized or approved an unconstitutional act or procedure that resulted in a specific instance of misconduct by the subordinate. *See Hicks v. Frey,* 992 F.2d 1450, 1455 (6th Cir.1993)(noting that an official may be held liable for failure to supervise and control subordinates even though the official was not directly involved in the specific incident of misconduct).

■ Risbridger alleges that Chief Connelly authorized Officer Fadley to arrest individuals for refusing to identify themselves using the ordinance as a basis for the arrest. (*See* 1st Am. Compl. ¶ 27.) In addition, Risbridger alleges that East Lansing police officers have used the ordinance pursuant to a custom and policy implemented by Chief Connelly to arrest other individuals solely for refusing to provide identification. (*See id.* ¶¶ 28–29.) Risbridger claims that Chief Connelly and the City have continued to enforce the ordinance against individuals for failure to produce identification even after Judge Ball determined that the arrest was invalid. (*See id.* ¶ 31.) For each of these allegations, Risbridger asserts that evidentiary support is likely to be obtained after a reasonable opportunity for investigation or discovery. These allegations are sufficient to allege a claim for supervisory liability because, if supported by evidence, they would demonstrate that Chief Connelly authorized and/or instructed police officers to use the ordinance as a basis for arresting individuals solely for failing to provide identification during an investigatory detention. Such conduct would

amount to authorization or approval of an unconstitutional act or procedure sufficient to support supervisory liability.

### c. Municipal Liability

■ Defendants also contend that Risbridger's claims against the City must be dismissed. Municipal liability, like supervisory liability, may not be based upon respondeat superior. Instead, a plaintiff must allege and prove that the alleged constitutional deprivation was caused by custom or policy adopted by the municipality. *See Monell v. Department of Social Servs.*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978).[8] A plaintiff who seeks to impose liability against a municipality pursuant to § 1983 must do more than show some conduct that is attributable to the municipality. Instead, a "plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." *Board of County Comm'rs v. Brown*, 520 U.S. 397, 404, 117 S.Ct. 1382, 1388, 137 L.Ed.2d 626 (1997)(emphasis in original). To meet this burden, a plaintiff must "adduce[ ] evidence of a definitive city policy, custom, or usage which was an affirmative link, the moving force that animated the behavior— the acts of commission or omission—of the police officers that resulted in the constitutional violations alleged." *Deaton v. Montgomery County*, 989 F.2d 885, 889 (6th Cir.1993).

It is unclear whether Defendants' argument is based upon both Fed.R.Civ.P. 12(b)(6) and 56 or whether it is only presented as a Rule 56 motion. In either event, Risbridger's allegations that his arrest resulted from the City's policy or custom of using the ordinance to arrest individuals who refuse to provide identification is sufficient to allege a claim for municipal liability. To the extent that the motion is based on Rule 56, the Court will deny the motion to allow Risbridger a sufficient opportunity to conduct discovery on his claims. Defendants may renew the motion after discovery has been completed.

### 2. First Amendment

Risbridger alleges in Count II that Defendants violated his First Amendment rights by arresting and detaining him for questioning Officer Fadley why he had to produce identification and declaring his legal rights. Risbridger and Defendants both seek summary judgment on this claim. Defendants contend that they are entitled to summary judgment because Risbridger cannot show that Officer Fadley arrested him based upon the content of his speech. Risbridger counters that he is not making an "as applied" challenge, but instead is making a "facial challenge" under the First Amendment. Therefore, the Court considers this issue as limited to a "facial challenge" based on First Amendment overbreadth.[9]

■ The First Amendment overbreadth doctrine is an exception to "[t]he traditional rule ... that a person to whom a statute may constitutionally be applied may not challenge that statute on the ground that it may conceivably be applied unconstitutionally to others in situations not before the Court." *New York v. Ferber*, 458 U.S. 747, 767, 102 S.Ct. 3348, 3360, 73 L.Ed.2d 1113 (1982)(citing *Broadrick v. Oklahoma*, 413

---

**8.** Qualified immunity is not available as a defense to municipalities. *See Scott v. Clay County*, 205 F.3d 867, 879 (6th Cir.2000).

**9.** In *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982), the Supreme Court stated that where a plaintiff makes a facial challenge to the overbreadth and vagueness of a law, a court should first determine whether the law reaches a substantial amount of constitutionally protected conduct. If it does not, the overbreadth challenge should fail and the court should proceed to the facial vagueness inquiry. If the enactment does not implicate constitutionally protected conduct, the court should strike down the enactment only if it is impermissibly vague in all its applications. *See id.* at 494–95, 102 S.Ct. at 1191.

U.S. 601, 610, 93 S.Ct. 2908, 2914, 37 L.Ed.2d 830 (1973)). This exception to traditional standing requirements is based on the principle that society's interest in constitutionally protected speech justifies litigants in challenging overly broad statutes not on their own behalf, but rather on behalf of those not before the court whose constitutionally protected expression may be chilled by enforcement of the law. *See Los Angeles Police Dep't v. United Reporting Publ'g Corp.*, 528 U.S. 32, 120 S.Ct. 483, 488, 145 L.Ed.2d 451 (1999); *Triplett Grille, Inc. v. City of Akron*, 40 F.3d 129, 135 (6th Cir.1994). If the exception applies, the result is that the statute in question may not be enforced "until and unless a limiting construction or partial invalidation so narrows it as to remove the seeming threat or deterrence to constitutionally protected expression." *Broadrick v. Oklahoma*, 413 U.S. 601, 613, 93 S.Ct. 2908, 2916, 37 L.Ed.2d 830 (1973). Given this drastic measure, the Court has characterized the doctrine as "strong medicine" which should be applied "sparingly and only as a last resort." *Id.*

■ In order for the doctrine to apply, the statute must be substantially overbroad on its face. *See City of Houston v. Hill*, 482 U.S. 451, 458, 107 S.Ct. 2502, 2508, 96 L.Ed.2d 398 (1987). In order to succeed in establishing substantial overbreadth, a plaintiff must show that there is "a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court." *Members of the City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 801, 104 S.Ct. 2118, 2126, 80 L.Ed.2d 772 (1984). "[H]owever, ... the mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." *Id.* at 800, 104 S.Ct. at 2126 (footnote omitted).

■ Risbridger contends that Ordinance 9.102(19) is overbroad because it allows police officers to demand identification from anyone on the street under any circumstances, and a failure to provide identification may be deemed obstructing or hindering a police officer in the performance of his duties. Risbridger contends that Ordinance 9.102(19) reaches a substantial amount of speech and/or the right of assembly because the City may use the ordinance against persons or groups that assemble to support or oppose a particular point of view by demanding identification from such persons. In the same vein, Risbridger contends that by permitting police officers to demand identification, the ordinance allows the City to keep a roster of young persons who peacefully gather or stroll the streets.

As support for his argument, Risbridger cites *Leonardson v. City of East Lansing*, 896 F.2d 190 (6th Cir.1990). In that case, the plaintiffs alleged that an East Lansing ordinance was unconstitutionally overbroad and vague. Section 9.111 of the ordinance authorized the police chief to establish a police line in response to certain events, and section 9.112 authorized the mayor, upon a finding and recommendation by the chief of police that an event described in the section 9.111 was likely to occur, to establish a safety zone or safety line in advance of the event. The ordinance was passed in order to prevent the occurrence of an annual event known as Cedarfest, which historically resulted in numerous acts of violence and destruction of property by drunken individuals. *Id.* at 191–93. The Sixth Circuit concluded that the ordinance was subject to an overbreadth challenge because the ordinance was patterned after a District of Columbia police line ordinance which had been used to control disorderly political demonstrations. *Id.* at 195–97. The court next considered the issue of whether the language of the ordinance was unconstitutionally vague. Following the reasoning of the court in *Washington Mobilization Committee v. Cullinane*, 566 F.2d 107 (D.C.Cir. 1977), which addressed the constitutionality of the District of Columbia ordinance,

the Sixth Circuit reasoned that section 9.111 contained words that could be construed to limit the scope of the ordinance to situations not implicating First Amendment protections and therefore was not vague. *See id.* at 195–97. However, the court reached the opposite conclusion with respect to section 9.112, which was not part of the District of Columbia ordinance, because that section allowed the mayor to use a police line as a preventative measure and lacked any standards to guide the mayor's discretion in administering it. Given those circumstances, the court found that "Section 9.112 of the Ordinance could be used in advance to prevent persons wishing to demonstrate from engaging in protected speech or it could be used to set up police lines on an arbitrary basis against political dissenters." *Id.* at 198. Furthermore, the court noted that the ordinance allowed a system of prior restraint. The court concluded that section 9.112 was overbroad because "it create[d] a penal statute susceptible of arbitrary enforcement that [could] be used as a prior restraint against activities protected by the First Amendment." *Id.* at 199.

The Court finds *Leonardson* distinguishable from the instant case on several grounds. First, Risbridger has failed to present evidence that the City has used Ordinance 9.102(19) to suppress or discourage protected speech, whereas in *Leonardson* there was evidence that another municipality had used the same type of statute to suppress political activities. Second, section 9.102(19) does not contain any language that could be reasonably construed as creating a system of prior restraint as was the case in *Leonardson.* Finally, nothing in the language of the ordinance indicates a potential to chill First Amendment freedoms, nor is the language used explicitly directed at acts involving First Amendment protections.

In *Fair v. City of Galveston,* 915 F.Supp. 873 (S.D.Tex.1996), *aff'd,* 100 F.3d 953 (5th Cir.1996), the court addressed a First Amendment overbreadth challenge to an ordinance similar to the ordinance at issue here. The ordinance provided: " 'It shall be unlawful for any person to obstruct, prevent or interfere with, or to attempt to obstruct, prevent or interfere with any peace officer in the lawful discharge of his duty.' " *See Fair,* 915 F.Supp. at 879 (quoting Galveston City Code of 1982, § 24–7). The court rejected the overbreadth challenge because there was no evidence that the city had ever used the ordinance to effect an arrest based upon constitutionally protected speech and the plaintiff failed to demonstrate the ordinance's potential to chill First Amendment speech. *See id.* The court also rejected the plaintiff's contention that the language of the ordinance was analogous to the ordinance at issue in *City of Houston v. Hill,* 482 U.S. 451, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987). The ordinance in *Hill* made it "unlawful for any person to assault, strike or in any manner oppose, molest, abuse or interrupt any policeman in the execution of his duty." *Hill,* 482 U.S. at 455, 107 S.Ct. at 2506. The Supreme Court held that the ordinance criminalized a substantial amount of constitutionally protected speech because the prohibition against "interrupting" a police officer encompassed a significant amount of speech protected by the First Amendment. *See id.,* 482 U.S. at 460–67, 107 S.Ct. at 2508–2512. The court in *Fair* concluded that the ordinance at issue in that case was significantly different from the ordinance in *Hill* because by using the term "interfere," the Galveston ordinance "facially pertain[ed] to acts which pose an actual hindrance to the accomplishment of a specified task, as opposed to the ordinance considered in *Hill,* which pertained primarily to verbal acts through use of the term 'interrupt.' " *Fair,* 915 F.Supp. at 879. The Court finds the analysis in *Fair* persuasive given the substantial similarity between Ordinance 9.102(19) and the ordinance in *Fair.* For those same reasons, the Court concludes that Ordinance 9.102(19) is not overbroad on its face.

### 3. Due Process Claim

 Risbridger also alleges that Ordinance 9.102(19) violates his right to due process under the Fourteenth Amendment because it is impermissibly vague. Under the void-for-vagueness doctrine, a statute may violate the Constitution if it fails: "(1) to define the offense with sufficient definiteness that ordinary people can understand prohibited conduct, and (2) to establish standards to permit police to enforce the law in a non-arbitrary, non-discriminatory manner." *Belle Maer Harbor v. Charter Township of Harrison,* 170 F.3d 553, 556 (6th Cir.1999)(citing *Kolender,* 461 U.S. at 357, 103 S.Ct. at 1858). The Supreme Court has explained that the void-for-vagueness doctrine embodies several due process protections:

> It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them.

*Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 2299, 33 L.Ed.2d 222 (1972)(footnotes omitted).

The Sixth Circuit has held that in cases not involving First Amendment concerns, the court must examine whether the statute is unconstitutionally vague as applied to the specific facts of the case rather than whether the statute is unconstitutional its face. *See United States v. Hill,* 167 F.3d 1055, 1063 (6th Cir.1999)(citing *United States v. Loehr,* 966 F.2d 201, 204 (6th Cir.1992)). However, where the enactment imposes criminal sanctions, the court may also engage in a facial analysis. *See*

*Belle Maer Harbor,* 170 F.3d at 557; *Women's Med. Prof'l Corp. v. Voinovich,* 130 F.3d 187, 197 (6th Cir.1997). In addition, the degree of vagueness and importance of fair notice varies in relation to the nature of the enactment. Thus, "[w]hen criminal penalties are at stake, for instance, a relatively strict test is warranted." *Peoples Rights Org., Inc. v. City of Columbus,* 152 F.3d 522, 533 (6th Cir.1998)(citing *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 498–99, 102 S.Ct. 1186, 1193–94, 71 L.Ed.2d 362). In this case, Risbridger has alleged, and asserts in his motion, an as-applied challenge rather than a facial challenge. Although a facial challenge would be permissible in this case, the Court finds that an as-applied challenge is most appropriate because, on its face, Ordinance 9.102(19) does not threaten First Amendment interests. *See National Rifle Ass'n of Am. v. Magaw,* 132 F.3d 272, 291–92 (6th Cir.1997)(quoting *Maynard v. Cartwright,* 486 U.S. 356, 361, 108 S.Ct. 1853, 1857–58, 100 L.Ed.2d 372 (1988)).

Risbridger contends that Ordinance 9.102(19), as applied to his conduct, is unconstitutionally vague because it fails to meet both prongs of the vagueness doctrine. He argues that Ordinance 9.102(19) fails to give citizens fair notice that they can be arrested for failing to give identification to police officers and there are no guidelines for determining the requirements for proper identification. In *Kolender,* the Supreme Court held that a California loitering statute was facially void because it failed to provide standards for determining the sufficiency of identification. *See Kolender,* 461 U.S. at 357–62, 103 S.Ct. at 1858–60. The statute at issue, § 647(e) of the California Penal Code, provided:

> Every person who commits any of the following acts is guilty of disorderly conduct, a misdemeanor: .... (e) Who loiters or wanders upon the streets or from place to place without apparent

reason or business and who refuses to identify himself and to account for his presence when requested by any peace officer to do so, if the surrounding circumstances are such as to indicate to a reasonable man that the public safety demands such identification.

*Kolender,* 461 U.S. at 353 n. 1, 103 S.Ct. at 1856 n. 1 (quoting Cal.Penal Code. § 647(e)). In examining the statute, the Court first considered any previous limitations imposed by courts on the language of the statute, which included the decision by the California Court of Appeal in *People v. Solomon,* 33 Cal.App.3d 429, 108 Cal.Rptr. 867 (1973). *See Kolender,* 461 U.S. at 355–57, 103 S.Ct. at 1857–58. In *Solomon,* the California Court of Appeal held that § 647(e) required an individual to provide "credible and reliable" identification to a police officer when requested by a police officer during the course of a valid *Terry* stop. *Id.* at 355–57, 103 S.Ct. at 1857–58 (quoting *Solomon* ). The California Court of Appeal further held that "credible and reliable identification" was identification " 'carrying reasonable assurance that the identification is authentic and providing means for later getting in touch with the person who has identified himself.' " *Id.,* 461 U.S. at 357, 103 S.Ct. at 1858 (quoting *Solomon,* 33 Cal.App.3d at 438, 108 Cal. Rptr. 867). The Supreme Court found § 647(e), both as drafted and as construed by the state courts, vague because there were no standards provided to assist police officers in determining what sufficed as "credible and reliable" identification. The Court observed:

Section 647(e) is not simply a "stop-and-identify" statute. Rather, the statute requires that the individual provide a "credible and reliable" identification that carries a "reasonable assurance" of its authenticity, and that provides "means for later getting in touch with the person who has identified himself." In addition, the suspect may also have to account for his presence "to the extent it assist in producing credible and reliable identification."

. . . .

It is clear that the full discretion accorded to the police to determine whether the suspect has provided a "credible and reliable" identification necessarily "entrust[s] lawmaking 'to the moment-to-moment judgment of the policeman on his beat.' " Section 647(e) "furnishes a convenient tool for 'harsh and discriminatory enforcement by local prosecuting officials, against particular groups deemed to merit their displeasure,' " and "confers on police a virtually unrestrained power to arrest and charge persons with a violation." In providing that a detention under § 647(e) may occur only where there is the level of suspicion sufficient to justify a *Terry* stop, the State ensures the existence of "neutral limitations on the conduct of individual officers." Although the initial detention is justified, the State fails to establish standards by which the officers may determine whether the suspect has complied with the subsequent identification requirement.

*Id.* at 359–61, 108 Cal.Rptr. 867 (footnotes and citations omitted)(alteration in original).

In *Fields v. City of Omaha,* 810 F.2d 830 (8th Cir.1987), the Eighth Circuit struck down an Omaha loitering and prowling ordinance on the ground that it was unconstitutionally vague. The ordinance made it unlawful for a person to "loiter or prowl in a place, at a time or in a manner not usual for law abiding individuals under circumstances that warrant alarm for the safety of persons or property in the vicinity," but required police officers to allow an individual "an opportunity to dispel any alarm ... by requesting him [or her] to identify himself [or herself] and explain his [or her] presence and conduct." *See id.* at 833 n. 1 (quoting Omaha Mun. Code §§ 20–171 to 173). The court, finding the identification requirement indistinguishable from the "credible and reliable identification" requirement in *Kolender,*

concluded that the ordinance was vague, both with respect to the identification requirement and the explanation of presence and conduct requirement. *See id.* at 833–34.

Defendants are correct that the ordinance in this case differs from the statute in *Kolender* because Ordinance 9.102(19) is not a vagrancy or "stop and identify" ordinance. However, this distinction does not mean that *Kolender* is irrelevant to the inquiry in this case. In *Kolender,* the explicit requirement of "credible and reliable" identification was found to be vague because there were no standards to guide a police officer's discretion in enforcing the law. In this case, Ordinance 9.102(19) is similarly vague because it lacks any standard by which police officers can determine whether the identification requirement has been met. *See People v. Defillippo,* 80 Mich.App. 197, 201, 262 N.W.2d 921, 923 (1977), *rev'd on other grounds,* 443 U.S. 31, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979)(noting that Detroit stop and identify ordinance failed to "define which of today's numerous forms of identification will satisfy a police officer's desire for verifiable documents"). Ordinance 9.102(19) goes beyond *Kolender* because nothing in the language of the ordinance informs a person of average intelligence that he or she may be required to provide identification to a police officer upon request. If refusing to produce identification violates Ordinance 9.102(19), so would refusing to provide an address, a telephone number, a birth date, an explanation for one's presence and behavior, and so on. Moreover, there are no guidelines on whether the identification requirement is to be enforced at the beginning of the detention or at the end, after the officer has asked his questions. For these reasons, the Court concludes that the ordinance is unconstitutionally vague as applied to Risbridger in this case.

## B. State Law Claims

In Count V, Risbridger alleges claims for violation of the Michigan Constitution, violation of M.C.L. § 764.15, and false arrest, false imprisonment, and malicious prosecution. Defendants argue that these claims should also be dismissed.

### 1. Michigan Constitution

Risbridger alleges that Defendants violated his rights under Article I, §§ 5 and 11 of the Michigan Constitution by violating his rights to freedom of speech and to be free from unreasonable searches and seizures. Defendants contend that these claims must be dismissed because Risbridger cannot establish that a custom, policy, or practice of the City was the driving force behind the alleged deprivation of Risbridger's constitutional rights. In addition, Defendants argue that Risbridger cannot establish "deliberate indifference," as required to succeed on a failure to train claim against the City.

 The Court will dismiss Risbridger's free speech claim under Art. I, § 5 for the same reason as the First Amendment claim, namely, that on its face, Ordinance 9.102(19) does not implicate free speech protections. Similarly, for the reasons set forth above with regard to the Fourth Amendment claim, the Court concludes that Risbridger's rights under Art. I, § 11 of the Michigan Constitution were violated because Officer Fadley did not have probable cause to arrest Risbridger. In addition, because Michigan has adopted the same test for municipal liability for violation of state constitutional rights that federal courts have adopted for federal constitutional violations, i.e., the *Monnell* standard, *see Johnson v. Wayne County,* 213 Mich.App. 143, 150, 540 N.W.2d 66, 69 (1995), the Court finds that Risbridger has alleged sufficient facts to support a claim for municipal liability. As noted above, Risbridger claims that evidentiary support for these allegations is likely to be obtained after a reasonable opportunity for discovery. Therefore, the Court will deny

Defendants' motion on the claim under Art. I, § 11.[10]

### 2. False Arrest and Imprisonment and Malicious Prosecution

■ Defendants contend that Risbridger's claim under M.C.L. § 764.15, which authorizes a police officer to make an arrest without a warrant for a misdemeanor only when the crime is committed in the officer's presence, and Risbridger's claims for false arrest, false imprisonment, and malicious prosecution must be dismissed because Officer Fadley had probable cause to believe that Risbridger violated Ordinance 9.102(19) by refusing to identify himself. The Court has already determined that Officer Fadley did not have probable cause to arrest Risbridger because Risbridger had the right under the Fourth Amendment to refuse to answer Officer Fadley's questions. Because the sole basis for Defendants' motion is that Officer Fadley had probable cause to arrest Risbridger, the Court will deny Defendants' motion with respect to these state law claims because Officer Fadley did not have probable cause to arrest Risbridger and Officer Fadley should have been aware of this fact.

### IV. Conclusion

For the foregoing reasons, the Court will grant and deny both motions in part. With regard to Count I (Fourth Amendment), the Court will grant Risbridger's motion and deny Defendants' motion based upon its conclusion that Risbridger's Fourth Amendment rights were violated. The Court will also deny Defendants' motion with respect to qualified immunity for Officer Fadley and Chief Connelly in his individual capacity. Finally, the Court will deny the motion with respect to Chief Connelly in his official capacity and the City's liability. With regard to Count II

(First Amendment), the Court will grant Defendants' motion and deny Risbridger's motion. With regard to Count III (due process/vagueness), the Court will grant Risbridger's motion and deny Defendants' motion. Finally, with regard to the state law claims in Count V, the Court will dismiss Risbridger's free speech claim under Art. I, § 5 of the Michigan Constitution but deny Defendants' motion with respect to Risbridger's claim under Art. I, § 11 of the Michigan Constitution and his claims for violation of M.C.L. § 764.15, false arrest and imprisonment and malicious prosecution.

---

10. Defendants also argue that Risbridger's failure to train claim should be dismissed to the extent it is brought as a negligence claim against the City. *See White v. City of Vassar,* 157 Mich.App. 282, 286, 403 N.W.2d 124, 126 (1987)(per curiam). Based upon its review of the First Amended Complaint the Court does not construe Risbridger's claim as one based upon negligence.